[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14864

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-20144-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PURA MEDINA,
ISABEL CANEPA,
ISABEL GUERRA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(May 11, 2007)**

Before TJOFLAT, FAY and SILER,* Circuit Judges.

FAY, Circuit Judge:

_____

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Defendants Pura Medina, Isabel Canepa, and Isabel Guerra (collectively "defendants") appeal their convictions for Conspiracy to Defraud the United States, Commit Health Care Fraud, and to Pay Kickbacks under 18 U.S.C. § 371, Health Care Fraud under 18 U.S.C. § 1347, Conspiracy to Commit Money Laundering under 18 U.S.C. § 1956(h), and Money Laundering under 18 U.S.C. § 1956(a)(1)(B). Defendants argue that the government did not produce sufficient evidence to warrant their convictions, and that the district court erred at sentencing when calculating the amount of loss. For the reasons set out below, we vacate the convictions of Canepa on all counts except the conspiracy to pay kickbacks count, and we find that her loss amount was erroneously calculated at sentencing. As to Medina, we vacate her conviction on all counts of the indictment. As to Guerra, we vacate her convictions on the six substantive health care fraud counts involving Ocean Medical Supply that occurred before May 4, 2001, but affirm all the remaining convictions. We also find that her loss amount was erroneously calculated at sentencing. Accordingly, we remand for resentencing as to Guerra and Canepa, and remand with instructions to dismiss all counts as to Medina.

## BACKGROUND

This case arises from transactions involving Ocean Medical Supply ("Ocean") and United Pharmacy ("United"). Guerra owned 50% stakes in both companies.[1]

---

1. Isabel Santos, Guerra's mother, was the other 50% owner of Ocean. Santos was a co-defendant at trial, but was acquitted pursuant to a motion under Rule 29 of the Federal Rules of Criminal Procedure. Carlos Gonzalez was the other 50% owner at United and was convicted at trial along with Guerra, Canepa, and Medina. However, he is not a party to this appeal.

2

Ocean dealt in Durable Medical Equipment ("DME") such as braces and oxygen tanks while United was a typical pharmacy that dealt in prescription drugs. Canepa was the secretary at Ocean and Medina was the secretary/technician at United.

At trial, Rubin Martinez, another pharmacy owner, testified that before Guerra and Gonzalez became Medicare providers through Ocean and United, they worked as patient recruiters, bringing patients to Martinez's pharmacy in exchange for illegal kickbacks. However, after receiving their own provider numbers through Medicare, Guerra and Gonzalez began taking the patients to their own businesses- Ocean and United.

There is testimony from Wendy Evans, a Special Agent with the FBI, that Guerra, in her capacity as part owner of both Ocean and United, signed documents to become a Medicare provider. Among other things, these documents certified that the Medicare provider would abide by the relevant Medicare regulations, specifically 42 CFR § 424.57. Subsection (c)(1) of this regulation provides that the supplier must "[o]perate[] its business and furnish[] Medicare-covered items in compliance with all applicable Federal and State licensure and regulatory requirements." According to Special Agent Evans's testimony, Guerra signed these documents for Ocean on May 4, 2001, and for United on May 18, 2000.

Several witnesses testified about the schemes Ocean and United were conducting. Nearly all the evidence presented at trial concerned kickbacks for patients, doctors, an orthotic fitter, and patient recruiters. Kickbacks were paid to

3

entice patients to submit their medicare claims through Ocean and/or United. A number of patient recruiters testified that they would bring patients who needed to fill prescriptions to Ocean or United in exchange for 50% of the profits made after submitting the claim to Medicare. The recruiter would then share their 50% with the patient. Recruiters also testified that doctors were paid to send patients to United and Ocean, including a Dr. Brito who worked across the hall from Ocean.

Miguel Ugarte, an orthotic fitter who measured and constructed braces for Ocean's customers, testified that he was paid $25 to measure each patient Ocean sent him. He also testified that he did not actually measure many of the patients himself, despite signing forms to that effect.

Mauricio Abanto, a government informant, testified about his interactions with the defendants. Abanto testified that he was in the business of money laundering and dealt with several Medicare providers, including Ocean and United. Abanto used his advertising businesses as a cover to give the impression that any money Medicare providers paid him was for advertising. When federal authorities confronted him, he agreed to cooperate and videotape his money laundering transactions. Several videos were admitted at trial that showed all three defendants meeting separately with Abanto. During the taped encounters they would generally give him a check for $10,800, and they would get back $10,000 in cash. Abanto would keep the remaining $800 as a fee for cashing the checks.

The defendants would count the money and sometimes would discuss their scheme. While Guerra usually dealt with Abanto on behalf of Ocean, Canepa, Guerra's secretary, dealt with Abanto when Guerra was unavailable. Canepa was recorded as saying that Ocean needed the cash to pay doctors and patients with whom they did business. Canepa also stated that patients were being paid $250 per knee brace.

Usually Carlos Gonzalez dealt with Abanto on behalf of United. However, there were some instances when Medina received and counted the cash delivered, and where she wrote out checks for Abanto. However, she did not sign any of the checks herself. In one instance, Medina was quoted as saying they "needed the money by Tuesday." However, on cross examination, Abanto testified that whenever Gonzalez and he would talk about the kickback scheme, Gonzalez would send Medina out of the room because she was just a secretary and Gonzalez didn't want her knowing that the cash was for paying kickbacks. The defendants were convicted on all the counts put before the jury.[2]

At sentencing, after the defendants were convicted, the district court determined that every claim United and Ocean submitted to Medicare was fraudulent, and thus, every one of those claims that medicare paid was part of the total loss calculated under U.S.S.G. § 2B1.1(b)(1). The district court calculated Ocean's loss

2. Pursuant to Rule 29 Motions for Judgment of Acquittal, the district court dismissed four of the substantive health care fraud counts as well as the "conspiracy to structure transactions" count, brought under 18 U.S.C. § 371, before the case was sent to the jury.

amount to be $1,863,962.84. This loss amount was attributed to Canepa, raising her base offense level by 16. The district court calculated United's loss amount while Medina was employed[3] at $6,173,828, which raised her base offense level by 18. Finally, since Guerra was involved with both Ocean and United through the entire time period of the indictment, her loss amount was the total Medicare paid to both businesses, $9,405,114.90. This loss amount raised Guerra's base offense level by 20 under the sentencing guidelines.

With these loss amounts taken into account, the district court sentenced Guerra to 99 months in prison, and Canepa and Medina to 48 months in prison.

## STANDARD OF REVIEW

There are two issues before this Court:

I. Whether there was sufficient evidence of the charged offenses to sustain the defendants' convictions.

II. Whether the district court erred in calculating the amount of loss at sentencing.

When analyzing sufficiency of the evidence, our review is *de novo*, but we must "resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." *United States v. Rudisill*, 187 F.3d 1260, 1267 (11th Cir. 1999) (quoting *United States v. Suba*, 132 F.3d 662, 671 (11th Cir. 1998) (internal quotes omitted)). However, the evidence must be sufficient that a reasonable jury could find

---

3. Medina stopped working at United in December of 2002, when Carlos Gonzalez sold his interest in United to Guerra. Any United losses calculated from December 2002 through April 2003 were attributed solely to Guerra.

that the government has proven guilt beyond a reasonable doubt. *United States v. Lopez-Ramirez*, 68 F.3d 438, 440 (11th Cir. 1995) (*citing United States v. Thomas*, 8 F.3d 1552, 1555 (11th Cir. 1993)) *see also Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S.Ct 2781, 2788, 61 L.Ed.2d 560 (1979).

The interpretation of the sentencing guidelines is a question of law that is reviewed *de novo*. *United States v. Malol*, 476 F.3d 1283, 1291 (11th Cir. 2007). However, the amount of loss determination at sentencing is reviewed for clear error. *United States v. Nostari-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001); *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999).

## ANALYSIS

### I. Sufficiency of the Evidence

### A. Health Care Fraud

The government indicted the four defendants on a total of 19 counts of substantive health care fraud under 18 U.S.C. § 1347.[4] The statute provides in pertinent part that:

> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice -- (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
> in connection with the delivery of or payment for health care benefits, items, or services shall be fined under this title or imprisoned not more than 10 years, or both...

---

4. None of the 19 counts charged all of the defendants together. Guerra was charged in all 19 counts. Canepa was charged in 10 counts. Medina was charged in 9 counts. Isabel Santos, the fifth defendant, was not charged in any of the health care fraud counts.

The district court dismissed four of the counts before the remaining 15 went to the jury.[5]

When discussing what constitutes "defrauding" the United States, the Supreme Court has stated:

> To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention.

*Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). The Tenth Circuit has held, and we adopt their holding, that in a health care fraud case, the defendant must be shown to have known that the claims submitted were, in fact, false. *United States v. Laughlin*, 26 F.3d 1523, 1526 (10th Cir. 1994).

The government argues the fact that patients received kickbacks for patronizing Ocean and United "taints" any claims the defendants made to Medicare on those patients' behalf. The government also argues that even if the prescriptions involved were medically necessary, and the patient received what was prescribed, the payment of a kickback is sufficient to establish the falsity required to defraud Medicare. In furtherance of this argument, the government offered the testimony of Tanya Moore, a Center for Medicare and Medicaid Services employee. Moore testified that if

---

5. See note 2 *infra*.

Medicare had the knowledge that a kickback had been paid to a patient or doctor, they would not pay the claim.

We hold that based on the facts of this case, representatives of Ocean and United paying kickbacks alone is not sufficient to establish health care fraud. While we acknowledge that paying kickbacks like those at issue in this case is a violation of 42 U.S.C. § 1320a-7b(b)(2)(A), we cannot hold that this conduct alone is sufficient to establish health care fraud without someone making a knowing false or fraudulent representation to Medicare. *See United States v. Porter*, 591 F.2d 1048, 1055-56 (5th Cir. 1979) (conspiracy to commit health care fraud was weakened where alleged kickbacks did not involve materially false statements or any money / property loss to Medicare.)

The government argues that representatives of both Ocean and United signed documents promising to abide by all of Medicare's rules and regulations when they registered to become Medicare Providers. Therefore, the government asserts that whenever anyone on behalf of Ocean and United filed claims where patients or doctors had received kickbacks in violation of the pertinent rules of Medicare, the defendants committed health care fraud.

This argument is only convincing as to Guerra. Given Rubin Martinez's testimony, a jury could reasonably conclude that Guerra was involved in paying kickbacks before becoming a Medicare Provider at Ocean and United. There is also the testimony from Special Agent Evans that Guerra signed documents to become a

Medicare Provider stating that she would follow all applicable Medicare rules and regulations. Indisputably, one of those rules would be to refrain from paying doctors and patients kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2)(A). Based on testimony that Guerra was a patient recruiter who paid patients to go to Rubin Martinez's pharmacy before she became a Medicare Provider, a jury could have reasonably concluded that Guerra knew full well she would continue to pay kickbacks when she signed the forms promising that she would not. Therefore, signing the Medicare Provider applications would qualify as a knowing misrepresentation under 18 U.S.C. § 1347. The government presented ample evidence to show that the kickback pattern continued after Guerra signed the forms. The record contains testimony from several patient recruiters who were paid to bring patients to Ocean or United through 2003. Also, the testimony of Abanto, the government informant, could lead a reasonable jury to conclude kickbacks were still being paid. Therefore, a reasonable jury could conclude that Guerra committed health care fraud after she signed the applications stating that she would follow Medicare's rules and regulations.

Special Agent Evans testified that Guerra signed the Medicare Provider applications for United and Ocean on May 18, 2000 and May 4, 2001, respectively. Since these are the only knowing misrepresentations we have found upon a thorough review of the record, it follows that any count of substantive health care fraud that occurred before Guerra signed the company's documents must fail. The first six

10

health care fraud counts against Ocean in the indictment occurred before May 4, 2001- when Guerra signed Ocean's Medicare Provider application.[6] Therefore, there is simply no evidence to support the guilty verdicts as to counts 2, 4, and 7. No false representation had been made to Medicare when the claims in those counts were submitted. Furthermore, since no evidence was presented that either Canepa or Medina was aware that Guerra had made these false representations to Medicare, this evidence is not sufficient to establish fraud as to those two defendants. *Laughlin*, 26 F.3d at 1526.

The government attempted to prove health care fraud as to Canepa and Medina by offering several other pieces of evidence. First, the government offered the testimony of Dr. Hugo Goldstraj. He testified that several prescriptions made in his name contained a forged signature and an unusually large number of refills. However, the government did not offer any evidence that any of the defendants were responsible for falsifying these or any other prescriptions. Nor is there any evidence in the record that the prescriptions at issue prescribed medications or DME that the patients did not need or did not receive. The mere fact that United or Ocean submitted prescriptions with forged signatures to Medicare is insufficient to establish fraud without some evidence that individuals at United or Ocean knew of the forgeries or forged the prescriptions themselves. Therefore, Dr. Goldstraj's testimony

---

6. The district court dismissed three of those counts before they were submitted to the jury.

is insufficient, standing alone, to establish health care fraud as to any of the defendants.

The government also offered testimony from former patient recruiters for Ocean and United, who stated that they were paid to bring in patients in violation of the kickback statute. However, none of these recruiters presented any evidence that a patient did not receive what they were prescribed, or that a patient did not need what was delivered. Special Agent Evans testified that a few of the oxygen concentrators that Ocean delivered were not being used. She reached this conclusion by examining patient files that recorded the total number of hours an oxygen concentrator was used. According to the files, one such device had only been logged as being used for one hour over the course of a year. In another instance, the number of total hours went down over the course of a year. To be interpreted as health care fraud, however, there must be some evidence present in the record that shows the patients were not legitimately prescribed the oxygen concentrators, or that Ocean and/or United made false or fraudulent representations to Medicare on the patients' behalf. There is no such evidence here. Taken in the light most favorable to the government, this evidence merely establishes that Ocean's files contained misstatements about how much Ocean's patients used the oxygen concentrators. There is no evidence that this information was submitted to Medicare in any capacity.

Finally, Special Agent Evans testified that United would bill Medicare for an aerosol medication that was manufactured out of the pharmacy, but would then give

the patient what is called a "compounded" medication that was mixed in the pharmacy. According to Special Agent Evans, Medicare did not cover compounded medication. It was also cheaper to make compounded medication than to purchase manufactured medication. On cross examination, however, Special Agent Evans was asked whether any specific patients were billed as receiving manufactured medication but actually received compounded medication. She could not name a specific patient, but rather could only state that this was a general practice at United.

Surely, the government must present some evidence that at least one specific patient received compounded medication when United billed Medicare for manufactured medication to prove health care fraud. A general allegation is not sufficient. The government argues that they could not call as witnesses patients or doctors who were paid kickbacks in violation of 42 U.S.C § 1320a-7b(b)(2)(A) because, due to their questionable credibility, they would not make "ideal witnesses." This argument is unconvincing. Many of the witnesses the government presented at trial were under indictment or had already pled guilty to similar kickback and fraud violations, and were testifying in cooperation with the government. The fact that the government can present these witnesses to establish kickbacks, but cannot present paid patients or doctors to show that United and/or Ocean made false claims to Medicare is quite contradictory and disingenuous. More importantly, it is the government's burden to prove every element of the charged offense beyond a reasonable doubt. *Christoffel v. United States*, 338 U.S. 84, 89, 69 S.Ct. 1447, 1450,

93 L.Ed 1826 (1949); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The government cannot ignore this burden simply because the witnesses who can establish the required elements are less than ideal. Thus, the government has not shown that either Medina or Canepa made any false or fraudulent representations to Medicare, nor did they present evidence that Canepa or Medina defrauded or attempted to defraud any health care program.

Therefore, we hold that Guerra's convictions on counts 2, 4, and 7 are not supported by sufficient evidence, but affirm her other twelve substantive health care fraud convictions. Furthermore, we hold that there is not sufficient evidence in the record to support the guilty verdicts as to Medina or Canepa on the charged substantive health care fraud counts under 18 U.S.C. § 1347. (Counts 2, 4, 6, 7, 9-13, 15-20)

## B. Conspiracy to Commit Money Laundering/Money Laundering

The government charged these defendants (and Carlos Gonzalez) with Conspiracy to Commit Money Laundering under 18 U.S.C. § 1956(h), as well as eleven counts of substantive Money Laundering under 18 U.S.C. § 1956(a)(1)(B)(i).[7] For these counts to succeed, the government must prove that the proceeds were derived from a specified unlawful activity, and that the defendant had knowledge that the proceeds resulted from said unlawful activity. *United States v. Awan*, 966 F.2d

---

7. Carlos Gonzalez was the only defendant charged in six of the 11 substantive money laundering counts. Guerra was charged in three of the counts, one of which charged Canepa as well. Medina was charged with Carlos Gonzalez in two counts.

1415, 1434 (11th Cir. 1992); *United States v. Nattier*, 127 F.3d 655, 658 (8th Cir. 1997); *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003). The government argues that the health care fraud counts charged in the indictment satisfy the money laundering statute's specified unlawful act requirement.

As discussed previously, there is not sufficient evidence in the record to show that Canepa or Medina participated in or were aware of the charged health care fraud. The government conceded that cashing the checks through their informant, Abanto, and using the cash to pay patients illegal kickbacks was not money laundering in and of itself, since the illegal acts occurred subsequent to the monetary exchange. As such, health care fraud is the only specified unlawful act that could satisfy 18 U.S.C. § 1956. Therefore, since no evidence exists in the record to establish that Canepa or Medina were aware of the health care fraud, we must vacate their convictions for conspiracy to commit money laundering, as well as all the substantive money laundering counts.

As to Guerra, since there is evidence in the record to sustain some of her convictions for Health Care Fraud, the specified unlawful act requirement is satisfied. Specifically, there is evidence in the record that Guerra and Carlos Gonzalez conspired to launder money by (1) committing health care fraud, (2) cashing checks obtained via the health care fraud through Abanto, the government informant, so that it would appear the funds were legitimately spent on advertising, and (3) using that cash to illegally pay kickbacks to patients and doctors.

Guerra was also charged in three substantive money laundering counts. These counts occurred in October, November, and December of 2001. Since this was after she signed the documents certifying that she would follow Medicare rules and regulations, a reasonable jury could have concluded that Guerra was committing health care fraud, and as such, the requisite specified unlawful activity was present. Therefore, we hold that Guerra's convictions for conspiracy to commit money laundering and substantive money laundering are supported by sufficient evidence.

## C. Conspiracy to (a) Defraud the United States, (b) Commit Health Care Fraud, and (c) Pay Kickbacks

The jury convicted the defendants of violating 18 U.S.C. § 371, the multi-objective conspiracy count.[8] This Court has long held that where there is a conviction for a multi-object conspiracy, the evidence must only be sufficient to sustain a conviction for any one of the charged objectives. *United States v. McKinley*, 995

---

8. The Indictment charged a three-objective conspiracy as per 18 U.S.C. § 371:

(a) to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare;
(b) to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 1347, by knowingly and willfully executing, and attempting to execute, a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, in connection with the delivery of and payment for health care benefits, items, and services; and
(c) to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by knowingly and willfully offering and paying remuneration (including any kickback and bribe) directly and indirectly, overtly and covertly, in cash and in kind, to induce the referral of Medicare beneficiaries to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare.

F.2d 1020, 1025 (11th Cir. 1993) (*citing United States v. Johnson*, 713 F.2d 633, 646 (11th Cir. 1983)).

With regard to Guerra, there is ample evidence in the record that she conspired with Carlos Gonzalez and with Canepa, her secretary at Ocean Medical, to pay kickbacks. There is testimony from Rubin Martinez that Guerra and Gonzalez acted as patient recruiters before they opened United together, and before Guerra opened Ocean. Abanto, the government informant, testified that Guerra brought him checks signed in her name in exchange for cash. He also testified that when Guerra was unavailable, Canepa would bring him the checks bearing Guerra's signature. There is testimony from other patient recruiters that Guerra paid them to bring her patients at Ocean, and that Gonzalez paid recruiters to bring patients to United. All of this evidence could lead a reasonable jury to conclude that Guerra conspired with Gonzalez and / or Canepa to pay illegal kickbacks to patients in violation of 18 U.S.C. § 371.

All that is required to sustain a conviction for a multi-objective conspiracy is sufficient evidence of one of the objects of the conspiracy. *McKinley*, 995 F.2d at 1025. Therefore, because there is sufficient evidence in the record to support a conviction as to the third objective of the conspiracy, to pay illegal kickbacks, we need not decide whether there is sufficient evidence in the record to support the other two objectives. As such, we affirm the conspiracy conviction as to Guerra.

There is also sufficient evidence in the record to support Canepa's conviction for conspiracy to pay kickbacks. Abanto testified that Canepa would sometimes bring him checks and collect cash on behalf of Guerra. Guerra's signature was on the checks Canepa brought to Abanto. Furthermore, in Abanto's video recordings, Canepa is seen collecting cash and informing Abanto that they need the money to pay patients. Also in the recordings Canepa is heard saying that patients are paid $250 per knee brace. With all credibility inferences made in favor of the jury's verdict, a reasonable jury could have concluded that Canepa conspired with Guerra to pay kickbacks. Because there exists sufficient evidence to convict Canepa on one objective of the conspiracy, we need not reach the question of whether there was sufficient evidence to convict Canepa of the other conspiracy objectives.[9] *McKinley*, 995 F.2d at 1025. Thus, we affirm Canepa's conviction under the multi-objective conspiracy count.

On the other hand, there is not sufficient evidence in the record to convince a reasonable jury that Medina is guilty of any offense in the multi-objective conspiracy count. The only relevant evidence the government presented against Medina at trial was Abanto's testimony and videos. He testified that she would exchange checks for cash when Carlos Gonzalez, her boss, was unavailable. The checks all bore

---

9. Also worthy of note, Canepa's counsel at oral argument conceded that there is sufficient evidence in the record to show Canepa was involved in paying kickbacks to patients. We appreciate Counsel's candor.

18

Gonzalez's signature. The government argues that Medina made statements on the recordings that incriminate her.

The only questionable statement Medina made that the government presented was when she told Abanto, "We need the money by Tuesday because people are coming." However, when asked on cross to whom Medina was referring, Abanto testified that she only meant her boss, Carlos Gonzalez. If we take Medina's statement in the light most favorable to the jury's verdict, as our review requires, we can infer that she also referred to patient recruiters when she said "people are coming." However, this evidence is still not sufficient for conviction. This statement in no way acknowledges that she is aware that the cash is needed to pay illegal kickbacks rather than for paying lawful United associates. Also worthy of note, Abanto testified that Medina was not aware of the kickback conspiracy, and that Gonzalez told her to leave the room whenever they discussed the details of the scheme. When asked, Abanto said that Medina was "just a secretary."

Since there is not sufficient evidence to support the guilty verdict as to Medina of conspiracy to pay kickbacks, we must look to the other two objectives of the conspiracy. The other two objectives of the charged conspiracy are (1) to defraud the United States, and (2) to commit health care fraud. As discussed previously, upon a thorough review of the record, there is no evidence that Medina had any knowledge of any health care fraud, or participated in any scheme to defraud the U.S. government.

19

The government argues that Medina was the technician at United who prepared the compounded medications discussed previously. The argument is that since there was evidence that compounded medication was given to patients when Medicare was billed for manufactured medication, she is guilty of conspiracy to commit health care fraud. Even if we put aside the fact that the evidence in the record is not sufficient to sustain a conviction as to anyone for health care fraud on this ground, Medina's actions in preparing the compounded medication would still not be sufficient to establish her part in a conspiracy. There is no evidence in the record that shows Medina was preparing the compounded medication with knowledge that manufactured medication was actually being prescribed. Thus, there is insufficient evidence to show Medina's knowing participation in a conspiracy to defraud the United States or commit health care fraud. Based on this record, the government offers no other relevant evidence as to any of Medina's actions that would show her participation in a conspiracy for any of the three objectives charged. Therefore, we vacate Medina's conviction as to the multi-objective conspiracy count.

## II. Calculating the Loss

Because we vacate Medina's conviction on all counts, we need not address the sentencing issues on her appeal. However, since we affirm some of the convictions as to Guerra and Canepa, we address one sentencing issue.

Canepa argues, and Guerra adopts her argument, that the district court erred when it held that the entire amount Medicare paid out to United and Ocean from the

time period in the indictment, January 2000 through April 2003, was fraudulent and thus, could be included in the loss amount at sentencing.[10] The government counters that the district court did not err, arguing that there was evidence that the vast majority of patients were paid illegal kickbacks, and therefore, any claim submitted on their behalf was fraudulent. Thus, any money Medicare paid out on those claims is attributable to the loss amount.

Although the Sentencing Guidelines are now used in an advisory manner, as per *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district court must still correctly calculate the sentencing range prescribed by the guidelines. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). "A district court's determination regarding the amount of loss for sentencing purposes is reviewed for clear error." *United States v. Nostari-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001); *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999). *See also* U.S.S.G. § 2B1.1, comment (n.3(C)) (stating that because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence... the court's loss determination is entitled to appropriate deference")

---

10. This amounted to a $1,863,962.84 loss amount for Canepa and a $9,405,114.90 loss amount for Guerra.

(citing 18 U.S.C. § 3742(e) and (f)).[11]  In calculating the loss amount, "loss is the greater of actual loss or intended loss."[12]  U.S.S.G. § 2B1.1, comment (n.3(A)).

The district court needs only to make a reasonable estimate of the loss amount. U.S.S.G. § 2B1.1(b)(1)(D), comment (n.3(C)).  A reasonable estimate of the loss amount is appropriate because "often the amount of loss caused by fraud is difficult to determine accurately."  *United States v. Miller*, 188 F.3d 1312, 1317 (11th Cir. 1999).  But "[w]hile estimates are permissible, courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines.  *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) (*citing United States v. Wilson*, 993 F.2d 214, 218 (11th Cir. 1993)).  The amount of loss must be proven by a preponderance of the evidence, and the burden must be satisfied with "reliable and specific evidence."  *Id.* (internal quotes omitted).

The government cites *United States v. Cruz-Natal*, 150 Fed. Appx. 961 (11th Cir. Oct. 11, 2005), to argue that the district court did not err in its loss calculation. *Cruz-Natal*, an unpublished opinion, is distinct from the instant case in that there was no argument that the total amount the defendant attempted to recover from Medicare was fraudulent.  That case held simply that the district court did not clearly err in finding that the intended loss was the appropriate means by which to calculate loss,

---

11. All citations are to the 2004 version of the Sentencing Guidelines.

12. "Actual loss" is defined as the reasonably foreseeable pecuniary harm resulting from the offense, and "intended loss" is defined as the pecuniary harm that was intended to result from the offense.  U.S.S.G. § 2B1.1, comment (n.3(A)(i) and (ii)).

22

because it was greater than the actual loss. *Id.* at 964. It did not hold that, as a general matter, the total amount of all claims submitted to Medicare is an appropriate loss calculation in Medicare fraud cases.

In the instant case, the district court made no factual findings as to the amount of loss. When Canepa objected to the loss amount, rather than enumerating what "reliable and specific evidence" it used to calculate the loss amount, the district court stated "With regard to the loss amounts for which each of the defendants is to be held accountable those are my findings. I am overruling the objections as to the amount each defendant is to be held responsible for." Without further information from the district court, we cannot determine what factual basis was used to reach the conclusion that every claim submitted to Medicare constituted loss. Indeed, upon our review of the record, there is not sufficient evidence that any of the prescriptions were not medically necessary, or were not delivered to the patients.

As to Guerra, the total amount billed to Medicare on the health care fraud claims that we affirm is only $11,820. We find these claims fraudulent not because they were based on illegitimate prescriptions, but because the patients or doctors received kickbacks after Guerra certified to Medicare that she would not pay such remunerations. There was no evidence presented that these claims were not medically necessary. Even though Tanya Moore testified that Medicare would not pay a claim if they knew parties were receiving kickbacks, this is not sufficient to establish a loss to Medicare. Moore testified that Medicare pays out a fixed amount for every type

of claim. Therefore, evidence that shows that United and Ocean paid kickbacks from a fixed level of profits is not sufficient to show actual or intended loss to Medicare. As to Canepa, since we vacate her convictions on all counts of health care fraud, she cannot be held responsible for any loss resulting from Guerra's fraud.

Therefore, we hold that the district court clearly erred when it did not make specific factual findings upon which to base the loss amounts attributable to each individual defendant.

## CONCLUSION

As to Guerra, we vacate her convictions on the first three counts of health care fraud that occurred before she signed the relevant documents which certified that she would follow Medicare rules and regulations. We affirm her convictions on the multi-objective conspiracy count, the 12 remaining counts of health care fraud, the conspiracy to commit money laundering, and the substantive money laundering counts.

As to Canepa, we vacate her convictions on all health care fraud counts, the conspiracy to commit money laundering count, and all substantive money laundering counts. We affirm, however, her conviction on the multi-objective conspiracy count. The sentences imposed upon Guerra and Canepa are vacated and their cases are remanded to the district court for resentencing.

As to Medina, we vacate her convictions and sentences on all counts in the indictment, and remand to the district court with instructions to dismiss the charges.

24

**CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART AS TO GUERRA AND CANEPA; SENTENCES VACATED AND THE CASE REMANDED FOR RESENTENCING AS TO GUERRA AND CANEPA; CONVICTIONS REVERSED AND SENTENCES VACATED AS TO MEDINA.**