[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 15, 2008
THOMAS K. KAHN
CLERK

No. 07-10425
Non-Argument Calendar

_____

D. C. Docket No. 06-20362-CV-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

10150 NW 133 STREET,  HIALEAH GARDENS, FLORIDA,
together with all appurtenances thereto and
all improvements thereon, and Colonial
Bank Account Number 8032896576,

Defendant,

ISABEL SANTOS, and Vanessa Rodriguez,
the minor granddaughter of Isabel Santos
through her mother, Isabel Guerra,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 15, 2008)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

This is Isabel Santos and her minor granddaughter Vanessa Rodriquez's appeal of the district court's order of forfeiture against Santos' home and the bank account owned by Santos in trust for Rodriquez.

**I.**

Isabel Guerra, Santos' daughter and Rodriguez's mother, engaged in health care fraud and various other crimes through two companies she owned, Ocean Medical Supplies, Inc. and United Pharmacy Discount, Inc. On March 30, 2001 Santos bought the house that is one of the objects of this forfeiture proceeding. It cost $390,000, and the $206,041.26 that Santos paid up front came from a bank account funded by Ocean and United. The remainder of the purchase price was covered by a mortgage on the property. Between April 27, 2001 and April 28, 2002, Santos made her mortgage payments on the house—a total of $74,322.60—from the same account that supplied the initial money. She later made a $1293.55 payment from an account funded solely by United and a $22,000 payment from an Ocean corporate account. Those two accounts were later forfeited because they contained the proceeds of criminal activity. On June 3, 2002 Santos made the final $102,015.56 payment from the original bank account

out of which had come her initial $206,041.26 payment.

On April 25, 2004—one day after authorities obtained search warrants for Guerra's two companies—Santos deposited a $105,000 cashier's check into the bank account that is the other object of this forfeiture proceeding. The money for the cashier's check came from an Ocean account at another bank.

Guerra's involvement with Ocean and United led to her conviction on, among other charges, fifteen counts of health care fraud in violation of 18 U.S.C. § 1347 and one count of conspiracy to violate the anti-referral statute, 42 U.S.C. § 1320a-7b(b)(2)(A). The jury also found by a preponderance of the evidence that nineteen specific assets of Guerra's were subject to forfeiture. Although Santos was charged with structuring financial transactions for the purpose of evading reporting requirements in violation of 18 U.S.C. § 371 and 31 U.S.C. §§ 5313 & 5324(a)(3) because of her involvement in Ocean, the court entered a judgment of acquittal for her under Federal Rule of Criminal Procedure 29 insofar as that charge was concerned.

Guerra and her two of her co-defendants appealed their convictions and sentences. See United States v. Medina, 485 F.3d 1291 (11th Cir. 2007). We vacated Guerra's convictions on three of the health care fraud counts because, although she violated the anti-referral statute by paying kickbacks, those kickbacks

3

occurred before she signed her applications to be a Medicare provider and so were not health care fraud.  Id. at 1305.  We affirmed her convictions based on the kickbacks she paid after signing her applications to be a Medicare provider, vacated her sentence, and remanded for resentencing.  Id.  While Guerra's appeal was pending, the government brought this in rem civil forfeiture proceeding against Santos' home and the bank account she held in trust for Rodriguez.  Santos and Rodriguez opposed the action and filed claims on the property.  The parties filed cross-motions for summary judgment, and Santos and Rodriguez also moved to take the case off of the trial calendar pending the resolution of those motions.  The district court denied all of the motions.

When it became clear that the case was going to trial, Guerra and her former secretary, Isabel Canepa—both in prison at the time because of their involvement with Ocean—jointly petitioned the court for writs of habeas corpus ad testificandum to be allowed to testify at the forfeiture trial.  The district court denied their joint petition as untimely because the trial was to be held less than two weeks later.  Before trial, both parties stipulated to a joint statement of undisputed facts that included the transcripts of Guerra's and Santos' trial.

After hearing arguments based on the evidence in the record and the parties' stipulations, the district court found that the government had met its burden of

4

proving by a preponderance of the evidence that the monies used to purchase Santos' home and bank account were traceable to health care fraud and entered a judgment of forfeiture in favor of the government. In the course of doing so, the court found that Santos was ineligible for the innocent owner defense to forfeiture. Santos and Rodriguez now appeal.

## II.

In an appeal from an <u>in rem</u> civil forfeiture, we review the district court's findings of fact only for clear error and its conclusions of law <u>de novo</u>. <u>United States v. Watkins</u>, 320 F.3d 1279, 1281 (11th Cir. 2003).

Santos and Rodriguez first contend that the district court erred in ordering that the house and bank account be forfeited because the government's forfeiture complaint stated that the property was subject to forfeiture as the proceeds of health care fraud under 18 U.S.C. § 1347 and Guerra only violated the anti-referral statute. This argument relies on a misunderstanding of our decision in the criminal appeal. We held that once Guerra signed the application to become a Medicare provider her subsequent violations of the anti-referral statute constituted health care fraud. <u>Medina</u>, 485 F.3d at 1298. She signed the application for United on May 18, 2000 the application for Ocean on May 4, 2001. <u>Id.</u> at 1295. The house payments made with money from Guerra's companies spanned the period from

5

March 30, 2001 to June 3, 2002. The bank account at issue in this case was funded on April 25, 2004. Therefore, during the period that United and Ocean funds were being used to pay for Guerra's mother's house, Geurra was committing health care fraud through those companies. Guerra was still committing health care fraud when she drew a $105,000 cashier's check on the United and Ocean account, which was funded on April 25, 2004, to give to her mother and daughter.

Santos and Rodriguez next contend that the district court erred by failing to honor the parties' stipulation that all of the prescription medications filled by United were medically necessary and were actually dispensed to Medicare patients. They argue that because of this stipulation there was no fraud and, therefore, the court erred in ordering the forfeiture. Not only were those facts not stipulated, they would not lead to the conclusion that Santos and Rodriguez reach anyway. Every time Guerra received a payment from Medicare for a claim that resulted from a kickback, she committed fraud because Medicare would not have paid the claim had it known of the kickback. See id. at 1298. Therefore, whether the prescriptions filled by United after Guerra signed the Medicare provider application were necessary or not is irrelevant. The kickbacks that led to the claims made them fraudulent, so the money paid for the claims is the proceeds of a crime.

6

Santos and Rodriguez's third contention is that the district court erred by denying Guerra and Canepa's joint application for writs of habeas corpus ad testificandum. We will not reverse a district court based on its denial of a writ of habeas corpus ad testificandum unless the appellant can show that "the prisoner's presence would substantially further the resolution of the case." United States v. Wright, 63 F.3d 1067, 1071 (11th Cir. 1995). This requires that an application for the writ proffer the substance of the potential witness' testimony. Id. Because the application did not contain a proffer, the district court did not err in denying it.

Finally, Santos and Rodriguez contend that collateral estoppel precluded the district court from finding that Santos was aware of Guerra's illegal activities and thus not protected by the innocent owner defense. Because Santos was acquitted of the charges against her in the criminal case, Santos and Rodriguez assert that the fact she did not know of her daughter's criminal activities has already been litigated and the result was binding on the district court. This argument is unsound. See One Lot Emerald Cut Stones & One Ring v. United States, 409 U.S. 232, 235, 93 S. Ct. 489, 493 (1972) (holding that a criminal acquittal does not have collateral estoppel effect on a later civil forfeiture proceeding based on the same conduct). It is also irrelevant. The district court assumed that Santos was unaware that the house and money were traceable to the proceeds of a crime. The court

7

nonetheless found that Santos was ineligible for the innocent owner defense because she paid nothing for the property subject to forfeiture and the property was traceable to the proceeds of a criminal offense.  See 18 U.S.C. § 983(d)(3)(B)(iii).

Santos and Rodriguez have failed to identify any legal errors in the district court's order.  The record amply supports the district court's finding that the money used to purchase Santos' home and the money deposited in the bank account she held in trust for Rodriguez was traceable to health care fraud.

**AFFIRMED.**

8