UNITED STATES of America

v.

Mark ST. PIERRE.

Criminal No. 09–374.

United States District Court, E.D. Louisiana.

Aug. 30, 2011.

---

**52.** (R. Doc. 13–1 at 22.)

Matthew J. Coman, Andre Jude La-garde, Jon Michael Maestri, Matthew S.

Chester, Richard Rowland Pickens, II, U.S. Attorney's Office, New Orleans, LA, for Plaintiff.

Randall A. Smith, A. Zach Butterworth, Smith & Fawer, LLP, Michael W. Hill, Law Offices of Michael W. Hill, LLC, New Orleans, LA, for Defendant.

### PRELIMINARY ORDER OF FORFEITURE

ELDON E. FALLON, District Judge.

The Court has pending before it the issue of criminal forfeiture. The Court has heard oral argument and reviewed the briefs, the law, and the evidence introduced at trial and at the forfeiture hearing, and now issues this Preliminary Order of Forfeiture.

## I. PROCEDURAL HISTORY

On November 6, 2009, a grand jury returned a sixty-three-count Indictment against Mark St. Pierre, Gregory Meffert, and Linda Meffert, alleging bribery in connection with St. Pierre's business as a City of New Orleans information technology ("IT") subcontractor. Gregory Meffert later pleaded guilty and Linda Meffert entered into a pretrial diversion program. On December 17, 2010, a grand jury returned a fifty-three-count Third Superseding Indictment against St. Pierre. As required by Federal Rule of Criminal Procedure 32.2(a), the Indictment contained a notice that the Government sought forfeiture of property. (Rec. Doc. 252 at 21–24). The Government sought fraud forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) for the offenses alleged in Counts 1 through 52, and money laundering forfeiture pursuant to 18 U.S.C. § 982 for the offense alleged in Count 53.

The Third Superseding Indictment charged St. Pierre with bribing Gregory Meffert to obtain business with the City of

New Orleans and to approve payments for that business. Pursuant to the conspiracy and scheme, Meffert facilitated a change to City contract procurement procedures that exempted IT work and services from normal public bidding procedures and allowed IT contracts to be awarded to United States General Services Administration ("GSA") approved contractors. Meffert awarded a contract to a GSA contractor, CIBER, Inc., ("the GSA contract") with the understanding that CIBER would subcontract the work to Imagine Software, LLC, a company in which St. Pierre had a twenty-five-percent ownership interest. CIBER passed those invoices through to the City of New Orleans with a mark-up for its own profit. CIBER performed no work and exercised no supervision over Imagine employees on the GSA contract. Between 2004 and 2006, Imagine billed $6,327,816.45 to CIBER for subcontract work under the GSA contract. (Govt. Exh. C–1; Testimony of James Kroha). Throughout this period, and in exchange for Gregory Meffert's actions, St. Pierre paid bribes and kickbacks to Meffert in the forms of checks, free yard work and cleaning, and a credit card issued by another St. Pierre-owned company. St. Pierre also paid bribes and kickbacks to Anthony Jones, another City of New Orleans official, to expedite payments by the City related to that business.

Additionally, in 2006 Veracent, LLC, a different company wholly owned by St. Pierre, sold crime cameras to Dell, Inc., which in turn re-sold the cameras to the City of New Orleans. The first sale was for twenty-five crime cameras; Veracent billed Dell for $354,593.54, and Dell billed the City for $366,384.00. (Govt. Exh. 164). The second sale was for twenty-eight cameras; Veracent billed Dell for $384,981.50

and Dell billed the City for $404,240.52. (Govt. Exh. 165). Veracent received total payment from Dell in the amount of $739,575.04. (Govt. Exh. 166A).

This matter went to trial before a jury on May 9, 2011. During a two-and-a-half-week trial, the Government introduced substantial evidence and testimony supporting the charges summarized above. Before the jury began deliberations, the Court confirmed that neither the Government nor the Defendant requested that the jury determine any forfeiture issues. Fed. R.Crim.P. 32.2(b)(5)(A). On May 26, 2011, the jury returned a verdict of guilty as to all fifty-three counts. Pursuant to Rule 32.2(b)(1)(B) the Court held a forfeiture hearing on August 10, 2011, at which time the Government submitted evidence and the parties presented oral argument. (Rec. Doc. 328). St. Pierre did not introduce any evidence. The parties also submitted supplemental briefing on the legal issues. (Rec. Docs. 373, 374). The Court is now ready to rule on these issues.

## II. LAW & ANALYSIS

 Criminal forfeiture of property related to certain crimes is mandated by statute and has a punitive purpose, unlike restitution. *See United States v. Taylor,* 582 F.3d 558, 565–66 (5th Cir.2009) (citing *United States v. Webber,* 536 F.3d 584, 602–03 (7th Cir.2008)). Multiple overlapping statutes govern forfeiture. The Court must look to each count for which St. Pierre was convicted and identify the specific statutory basis for forfeiture setting forth the requisite nexus between the crime and any money or property connected to that crime that St. Pierre will be ordered to forfeit.[1] *See* Fed.R.Crim.P. 32.2(b)(1)(A). The Government has the burden to prove that nexus by a prepon-

---

1. The Government seeks a personal money judgment against St. Pierre rather than the forfeiture of specific property. Fed.R.Crim.P.

32.2(b)(1)(A). St. Pierre argues that the Government cannot pursue a monetary judgment against him for an amount greater than

derance of the evidence. *United States v. Juluke*, 426 F.3d 323, 326 (5th Cir.2005). The Court may rely on "evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed.R.Crim.P. 32.2(b)(1)(B).

## A. Applicable Forfeiture Statutes

The federal civil forfeiture statute, 18 U.S.C. § 981, applies to criminal cases pursuant to 28 U.S.C. § 2461(c). Section 981(a)(1)(C) requires forfeiture of property or proceeds that are traceable to a violation of certain enumerated criminal statutes. Directly or by reference to other statutes, that list includes federal program bribery in violation of 18 U.S.C. § 666(a)(2)[2] and honest services wire fraud in violation of 18 U.S.C. § 1343 and 1346.[3] Section 981(a)(1)(C) also mandates forfeiture for any conspiracy to commit any of those enumerated crimes. Therefore, § 981(a)(1)(C) applies to Counts 2 and 27 through 52, which charged violations of 18 U.S.C. § 666(a)(2); Counts 3 through 26, which charged violations of 18 U.S.C. § 1343 and 1346; and Count 1, which charged conspiracy to commit those substantive crimes.

For the violations in Counts 1 through 52 St. Pierre forfeits "[a]ny property, real or personal, which constitutes or is derived from *proceeds* traceable to a violation ... or a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C) (emphasis added). Section 981 defines "proceeds" differently based on the nature of the case:

(2) For purposes of paragraph (1), the term "proceeds" is defined as follows:

(A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

(B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant[4] shall have the bur-

$496,914.86 because it has not first exercised due diligence to pursue proceeds in the hands of others. He cites 21 U.S.C. § 853(p)(1), which governs forfeiture of substitute property. That provision does not apply in the manner St. Pierre suggests; the Government is not seeking a money judgment as a substitute for specific proceeds that cannot be located. Rather, the amount sought to be forfeited is itself the monetary proceeds of the criminal activity, and St. Pierre is personally liable for that amount.

**2.** Section 981(a)(1)(C) covers "specified unlawful activity (as defined in section 1956(c)(7) of this title)", and § 1956(c)(7)(D) includes "[18 U.S.C.] section 666 (relating to theft or bribery concerning programs receiving Federal funds)."

**3.** Section 981(a)(1)(C) covers "specified unlawful activity (as defined in section 1956(c)(7) of this title)", and § 1956(c)(7)(A) incorporates "any act or activity constituting an offense listed in section 1961(1) of this title" which in turn includes "[18 U.S.C.] section 1343 (relating to wire fraud)." In addition, the criminal forfeiture statute requires forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of" a violation of 18 U.S.C. § 1343 or conspiracy to violate it. 18 U.S.C. § 982(a)(2)(A).

**4.** Section 981 is a civil forfeiture statute applicable in criminal cases through 28 U.S.C. § 2461(c). In a criminal case, the criminal defendant has the burden of proof with respect to the issue of direct costs. *See United*

den of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

18 U.S.C. § 981(a)(2).

■ Neither party has squarely addressed which definition of "proceeds" applies in this forfeiture proceeding, although both note the existence of the relevant provision. (Government's Memo., Rec. Doc. 374 at 17; St. Pierre's Memo., Rec. Doc. 373 at 9). The Court finds that this case is closer to a "case[ ] involving ... lawful services that are sold or provided in an illegal manner," which is the subject of § 981(a)(2)(B). The Government is seeking forfeiture of amounts billed by Imagine or Veracent to companies which then billed the City of New Orleans. Information technology work is a lawful service and crime cameras are lawful goods, but the contracts for that work or those cameras were obtained through illegal bribes and kickbacks. Thus the amounts of money acquired through those contracts were for otherwise legal goods and services provided "in an illegal manner." *Cf. United States v. 10150 NW 133 St.,* 278 Fed.Appx. 880, 883 (11th Cir.2008) ("The kickbacks that led to the claims made them fraudulent, so the money paid for the claims is the proceeds of a crime.").

■ A different forfeiture provision governs Count 53, which charged a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 ... or any property traceable to such property" shall be forfeited. 18 U.S.C. § 981(a)(1)(A); 28 U.S.C. § 2461(c). "Property 'involved in'

an offense 'includes the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.'" *United States v. Bornfield,* 145 F.3d 1123, 1135 (10th Cir. 1998) (quoting *United States v. Tencer,* 107 F.3d 1120, 1134 (5th Cir.1997)). "Property 'traceable to' means property where the acquisition is attributable to the money laundering scheme rather than from money obtained from untainted sources." *Id.* (alterations omitted).

## B. Analysis

There is a threshold question of temporal scope. Although the conspiracy charged in Count 1 began in 2002, the Government "does not oppose [narrowing the scope to 2004 forward] for this limited purpose of this forfeiture calculation." (Rec. Doc. 374 at 9). St. Pierre argues that the bribes did not begin "until the latter part of November, 2004, which necessarily means that there were no alleged bribery or kickbacks prior thereto [and] there can be no ... proceeds, received by Mr. St. Pierre, directly or indirectly, prior to November of 2004." (Rec. Doc. 373 at 3). The trial record establishes by more than a preponderance that the conspiracy charged in Count 1 was in existence in early 2004, when Meffert effectuated the change to New Orleans procurement law that allowed CIBER to receive a no-bid contract with Imagine as its subcontractor. The fact that the specific bribes charged in Count 2 through 42 were not paid until later does not mean that there were no illegal acts advancing the conspiracy before that date. Accordingly, the Court will consider proceeds acquired through the illegal transactions from 2004 and after.

The Government seeks a monetary judgment against St. Pierre in the amount

*States v. Blechman,* No. 08–40008, 2010 WL 235035, *1 (D.Kan. Jan. 8, 2010).

of $7,098,440.97. That figure represents the sum of the total amount Imagine billed to CIBER for its subcontract work for the City of New Orleans under the GSA contract between 2004 and 2006, as well as the amount Dell billed the City of New Orleans for the two crime camera sales. According to the Government, that amount represents the proceeds generated under the contracts issued and payments made pursuant to the criminal conspiracy and scheme. In the alternative, the Government seeks the amounts St. Pierre personally acquired from the Imagine and Veracent contracts, as declared on his tax returns, as well as the amounts St. Pierre paid to Meffert and Jones as bribes and the amounts involved in the money laundering conspiracy.

St. Pierre takes the position that because he was only a twenty-five-percent owner of Imagine, LLC, and because he did not personally receive the full amount that Imagine billed to CIBER, he should only be required to forfeit what he personally obtained or acquired. According to St. Pierre, although he may be jointly and severally liable for the amounts received by co-conspirators, no other Imagine employees have been charged or implicated in the bribery conspiracy and scheme and thus he cannot be required to forfeit amounts that actually went to those non-conspirators. He argues that $496,914.86 is the appropriate figure, which represents the amount Imagine billed to CIBER from 2004 to 2006 on the GSA subcontract specifically for hours attributed to St. Pierre.

■ Generally, a criminal defendant will be jointly and severally liable with his or her coconspirators for the full amount of criminal proceeds. *See United States v. Olguin*, 643 F.3d 384, 395–96 (5th Cir. 2011); *United States v. Edwards*, 303 F.3d 606, 643 (5th Cir.2002). But it is difficult to glean other universally-applicable forfeiture principles for guidance in this case

because the case law deals with diverse forfeiture statutes and factual scenarios. Neither the Government nor St. Pierre has referred the Court to any authority directly on point with the present situation: a defendant who is convicted of non-drug-related crimes of conspiracy and bribery that resulted in the award of contracts for work which is not inherently illegal, the revenues of those contracts were shared between the defendant as well as unindicted business partners and employees not alleged to be criminally liable as co-conspirators.

■ In determining the proper forfeiture in this case, the Court must begin with the statutory definition of forfeitable proceeds applicable to Counts 1 through 52: "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). The crux of the matter is what amount of money was "acquired" through the illegal transactions, and who acquired it. The Government reads the term broadly to encompass funds acquired by Imagine or Veracent or anyone by way of St. Pierre's criminal activity, even if St. Pierre was contractually entitled to less than the full amount of that revenue and other non-conspirators received those funds. St. Pierre would read the term narrowly to encompass only funds that ended up in his hands and that he personally acquired.

St. Pierre's criminal activity can certainly be said to have generated or produced the GSA Contract and the crime camera deal, and therefore the revenues were in some sense generated through the illegal transactions resulting in the forfeiture. But St. Pierre was only a twenty-five-percent owner of Imagine and therefore he had a contractual right to less than all of that amount. That is, although his crimi-

nal actions produced the contract revenues, portions of those proceeds were diverted to his business partners before they ever could have been acquired by him. Accordingly, on these facts it is unreasonable and inconsistent with the purpose of forfeiture to require St. Pierre to forfeit funds which he neither directly or indirectly acquired. Thus, the Court will order St. Pierre to forfeit the proceeds acquired by Imagine through the GSA Contract and by Veracent through the crime camera deal, in proportion to his ownership interest in those respective entities.[5] The Government raises the specter that if a defendant "could not be held liable for proceeds that never entered his possession ... [that] would serve to incentivize concealment, fraudulent accounting, or even corporate shell games." (Government's Memo., Rec. Doc. 374 at 16). While that is a real risk where co-conspirators are involved, it does not seem to be implicated in this case; although some of the criminally-generated revenue went to others, the Government has not carried its burden to show how St. Pierre directly or indirectly acquired or otherwise benefitted from the share of the revenues that went to his unindicted business partners.

■ The Government has proved a nexus between the offenses and twenty-five percent of Imagine's billing from 2004 through 2006, representing St. Pierre's ownership interest. The evidence establishes that Imagine billed CIBER $6,327,816.45 pursuant to the subcontract for work on the GSA Contract. The markup that CIBER added to Imagine's invoices when it billed the City of New Orleans likewise was not and could not have been acquired by St. Pierre or the scheme as a result of the conspiracy and therefore it is not forfeitable. Forfeiture is also appropriate with respect to the crime camera proceeds, but the Court disagrees that the amounts Dell billed the City of New Orleans for those cameras are the appropriate measure. Dell's markup of the cameras is not an amount that Veracent and St. Pierre acquired as a result of the criminal activity; rather, as was the case with respect to Imagine, the appropriate measure is the amounts that Veracent billed Dell for the crime cameras and that Veracent (and St. Pierre) acquired. The exhibits introduced at trial establish that Veracent billed and received $739,575.04 for the crime cameras. Accordingly, that amount is also forfeitable.

Section 981(a)(2)(B) allows deducting from the forfeitable property the "direct costs incurred in providing the goods or services," but not "any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity." The burden is on St. Pierre on the issue of direct costs. *Id.; United States v. Blechman,* 2010 WL 235035, at *1. St. Pierre did not offer evidence or testimony at the forfeiture hearing regarding Imagine's or Veracent's direct costs in providing IT subcontracting services or crime cameras to the City, and accordingly he has not carried his burden to show any direct costs that would reduce the amount of the forfeiture order.

■ In the event that the Court ordered forfeiture of less than all of the $6,327,816.45 Imagine–CIBER billing, the

---

5. The Government's alternative request is for forfeiture of the amounts from Veracent that St. Pierre declared as income on his tax returns, which is more than the amounts Veracent acquired from Dell for the crime cameras. For the purposes of the forfeiture, the Government has not carried its burden to articulate and prove a nexus between St. Pierre's criminal activities and any other Veracent revenues. Accordingly, the Court will order forfeiture of the amount Veracent billed to and received from Dell, pursuant to the Government's primary request for forfeiture.

Government requested as an alternative, additional forfeiture of the funds that St. Pierre paid as bribes to Meffert and Jones. The bribes are certainly forfeitable by Meffert and Jones, as they are amounts acquired from the criminal activity and are definitely proceeds. Although the bribes *paid by* St. Pierre were not acquired by him and are thus not forfeitable by him as his own proceeds, they are forfeitable by him as proceeds to his coconspirators Meffert and Jones for which he is jointly and severally liable. Just as Meffert will be jointly and severally liable in forfeiture for the money acquired by St. Pierre pursuant to the scheme, so too is St. Pierre jointly and severally liable for the money Meffert acquired. *See United States v. Nicolo,* 597 F.Supp.2d 342, 350 (W.D.N.Y.2009) ("The government is also entitled to forfeiture [from Nicolo] of the roughly $1 million paid by Nicolo to Camarata in kickbacks for the fixed-fee contracts. Although that amount does not represent net profit from Nicolo's perspective, it was nevertheless part of the proceeds of the crime . . . ."); *cf. United States v. Genova,* 333 F.3d 750 (7th Cir.2003) (applying different standard for forfeiture of net, rather than gross, proceeds, but holding that joint and several liability between conspirators meant that kickbacks paid by one defendant were proceeds from co-defendant's perspective).

Accordingly, the Court must decide the extent to which the Government has proved a nexus between the offenses and the amount of bribes and kickbacks St. Pierre must forfeit. The evidence introduced at trial established by a preponderance that St. Pierre made the following bribe or kickback payments: a $38,000 check to a company incorporated by Linda Meffert (Count 2); credit card payments for $130,954.60 in credit card charges incurred by Meffert (Counts 3–26); $44,856.57 in home improvement expenses and Mardi Gras krewe dues for Meffert (Count 1); $647,426.25 in checks and transfers to Meffert through Logistix (Counts 27–42); and $22,000 in checks to Anthony Jones (Counts 43–52). Those amounts are forfeitable through the operation of joint and several liability between the co-conspirators.

■ The Government also seeks forfeiture of two additional amounts. At trial, evidence established that St. Pierre made $81,000 in cash withdrawals and that some of that amount paid for strippers for Meffert; however, the Court finds that the Government did not carry its burden for the purposes of this forfeiture hearing to show how much of that cash was actually used for that bribery purpose. The Court will not order St. Pierre to forfeit that $81,000.

■ The Government also seeks forfeiture of the amounts "involved in" Count 53, the money-laundering conspiracy, which it calculates to be $340,482.39. That amount represents the sum of the $38,000 check involved Count 2, and six bribes by check underlying Counts 32, 33, 34, 35, 36, and 37. Those checks were the subject of later financial transactions by Meffert and thus supported the conviction for money laundering conspiracy. But those amounts are already forfeitable as proceeds of Counts 2, 32, 33, 34, 35, and 36. Although forfeiture pursuant to Count 53 is an additional basis for forfeiting those funds, it is not appropriate to compound the forfeiture and require St. Pierre to forfeit double the amount because the transactions happened to violate two different criminal statutes.

Accordingly, the Court finds that the Government has carried its burden to show a nexus between the charges and amounts of money as follows:

$2,366,385.72 as to Count 1;

$38,000.00 as to Count 2;

$130,954.60 as to Counts 3 through 26;

$8,650.00 as to Count 27;

$10,292.00 as to Count 28;
$8,900.00 as to Count 29;
$8,650.00 as to Count 30;
$17,209.85 as to Count 31;
$31,150.00 as to Count 32 and Count 53;
$32,950.00 as to Count 33 and Count 53;
$31,831.32 as to Count 34 and Count 53;
$76,863.87 as to Count 35 and Count 53;
$76,687.20 as to Count 36 and Count 53;
$53,000.00 as to Count 37 and Count 53;
$23,612.49 as to Count 38;
$73,585.14 as to Count 39;
$67,000.00 as to Count 40;
$67,000.00 as to Count 41;
$60,044.38 as to Count 42;
$2,000.00 as to Count 43;
$2,000.00 as to Count 44;
$2,000.00 as to Count 45;
$2,000.00 as to Count 46;
$2,000.00 as to Count 47;
$2,000.00 as to Count 48;
$2,000.00 as to Count 49;
$2,000.00 as to Count 50;
$2,000.00 as to Count 51; and
$4,000.00 as to Count 52.

## III. CONCLUSION

For the foregoing reasons, based on the evidence introduced at trial and at the August 10, 2011 forfeiture hearing and pursuant to Federal Rule of Criminal Procedure 32.2,

IT IS ORDERED that the Defendant, Mark St. Pierre, shall forfeit to the United States the sum of Three Million, Two Hundred and Four Thousand, Seven Hundred and Sixty–Six Dollars and Fifty–Seven Cents ($3,204,766.57) pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A).

IT IS FURTHER ORDERED that pursuant to Federal Rule of Criminal Procedure 32.2(b)(4), upon imposition of sentence on the Defendant, Mark St. Pierre, this Preliminary Order of Forfeiture becomes final as to the Defendant, Mark St. Pierre.

IT IS FURTHER ORDERED that, because the forfeiture consists of a money judgment against Mark St. Pierre, no ancillary proceeding will follow. Fed. R.Crim.P. 32.2(c)(1).

IT IS FURTHER ORDERED that the United States District Court shall retain jurisdiction for the purpose of enforcing this order.