[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10099
Non-Argument Calendar

_____

D. C. Docket No. 07-60206-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KERRICK YOUNG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 16, 2008)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Kerrick Young appeals his 18-month sentence imposed after he was

convicted on a guilty plea of "conspiracy to commit access device fraud and aggravated identity theft" in violation of 18 U.S.C. § 371. He contends that the district court erred in its sentence finding about the amount of fraud loss attributable to him, arguing that the government failed to prove the loss with reliable specific evidence. He also contends that the court failed to articulate sufficient findings to support that amount of loss.

## I.

Young agreed to a factual proffer stating that he had participated in a conspiracy in which he received credit cards and gift cards encoded with stolen credit card information from another co-conspirator and used those cards to purchase merchandise, mostly electronics, from a Wal-Mart store. The factual proffer stated that Young had used unauthorized access devices to "obtain things of value aggregating at least $1,000.00" but did not further specify the amount of total loss.

The Presentence Investigation Report stated that the conspirators were Young and his cousin, Courtney Singh, along with two Wal-Mart employees, Darrel Pendergrass and Audra McLean. It recounted how on August 8, 9, and 13, 2007, Young and Singh fraudulently purchased $10,614.04 in electronics at Wal-Mart using credit cards and gift cards encoded with stolen credit card account

numbers.  The PSI also stated that on August 13, 2007, agents observed Singh fraudulently purchasing three laptop computers and a monitor in separate transactions with McLean and Pendergrass.  Singh exited the Wal-Mart and passed a laptop computer to Young.  Agents approached Singh and Young at their vehicles and recovered from each of them four credit cards embossed with their own names but re-encoded with credit card account numbers that did not match the numbers on the card.  Young, Singh, Pendergrass, and McLean were arrested.

The PSI summarized post-arrest statements by Singh, Pendergrass, and McLean.  Singh admitted that he and Young had been taking part in the credit card fraud scheme to purchase electronics from Wal-Mart for approximately two months.  As part of the scheme Singh received credit cards and gift cards, already encoded with credit card account numbers, from a man named Alrick Rickards. Singh and Young then used the cards to purchase merchandise from Wal-Mart and delivered that merchandise and the credit cards to Rickards.  Pendergrass and McLean both admitted to processing fraudulent transactions for Singh and Young and to receiving payment in merchandise for their cooperation.  The PSI also stated that Rickards had created a website that was used to sell the fraudulently purchased merchandise.

As to the loss amount, the PSI stated the total loss amount from the

conspiracy was $73,015. It did not, however, detail each fraudulent credit and gift card transaction. The PSI recommended applying an eight-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(1)(E), because the loss amount was between $70,000 and $120,000. That resulted in Young's advisory guidelines range being eighteen to twenty-four months' imprisonment.

Young objected to the statement in the PSI that he was involved in fraudulent purchases amounting to $73,015. He asserted instead that he "was only involved in approximately 4 or 5 purchases amounting to approximately $10,000." Young also separately objected to the eight-level enhancement under U.S.S.G. § 2B1.1(b)(1)(E) because it overstated his involvement in the conspiracy.

The district court held a joint sentencing hearing for Young and Singh. At that hearing Young renewed his objection that the PSI overstated the loss amount attributable to him. He pointed out that no loss amount was specified in the plea agreement or the factual proffer. Young argued that it was inconsistent with the guidelines to hold him accountable for the full amount of loss because he did not design the conspiracy and profited very little from it. He also argued that it was not reasonably foreseeable for him that there would be more than $73,000 in losses because he was "really more in the line of a courier type individual" who made purchases and gave the merchandise to another person. Young did concede that

"the scope of criminal liability may include the seventy-three thousand dollars as a conspiracy," but contended that "the scope of sentencing liability" for him was closer to $10,000.

The district court, after hearing from the government and considering U.S.S.G. § 1B1.3 and 2B1.1(b)(1)(E), determined by a preponderance of the evidence that the loss amount was between $70,000 and $120,000. The district court found "particularly probative" the commentary in U.S.S.G. § 1B1.3 regarding jointly undertaken criminal activity and reasonable foreseeability in connection with criminal activity.

The district court calculated a guidelines range of eighteen to twenty-four months and sentenced Young to eighteen months of imprisonment, two years of supervised release, and $73,015 in restitution. After sentencing, the district court solicited objections "to the Court's finding of fact or to the manner in which sentence was pronounced," and Young renewed his objection to the district court's determination as to the loss amount.

## II.

Young challenges on two grounds the eight-level enhancement under U.S.S.G. § 2B1.1(b)(1)(E) that was applied in sentencing him, contending that: (1) the government failed to carry its burden of proving the amount of loss attributable

to Young with reliable and specific evidence; and (2) the district court failed to make adequate factual findings regarding the amount of loss attributable to Young.

**A.**

Under the advisory sentencing guidelines, a defendant may be held accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). To be held responsible for the conduct of others, the conduct must be both (1) "in furtherance of the jointly undertaken criminal activity" and (2) "reasonably foreseeable in connection with that criminal activity." Id. § 1B1.3 cmt. n.2; United States v. Hunter, 323 F.3d 1314, 1319-20 (11th Cir. 2003). When determining the loss amount attributable to a particular defendant convicted of a conspiracy offense, the district court must "first determine the scope of criminal activity the defendant agreed to undertake, and then consider all reasonably foreseeable acts and omissions of others in the jointly undertaken criminal activity." United States v. McCrimmon, 362 F.3d 725, 731 (11th Cir. 2004) (quotations marks omitted). The government bears the burden of proving the loss amount with reliable and specific evidence. United States v. Medina, 485 F.3d 1291, 1304 (11th Cir. 2007); United States v. Gupta, 463 F.3d 1182, 1200 (11th

Cir. 2006).

Young does not question the fact that the total amount of loss to Wal-Mart caused by the conspiracy was not $73,015. He conceded at the sentencing hearing that "the scope of criminal liability may include the seventy-three thousand dollars as a conspiracy." So, the total loss being $73,015 is a fact that is deemed admitted for sentencing purposes, United States v. Shelton, 400 F.3d 1325, 1329–30 (11th Cir. 2005), leaving as the only question whether the district court erred in attributing that total amount of loss Young for sentencing purposes.

Young's admissions in his plea agreement and in factual proffer, as well as parts of the PSI support the attribution of the entire loss amount to Young. He admitted in the factual proffer that from June 10, 2007 to August 13, 2007, he participated in a conspiracy in which he received credit and gift cards encoded with stolen credit card information from another co-conspirator and used those cards to purchase merchandise, mostly electronics, from Wal-Mart. Young admitted to the facts in the PSI that: (1) he made fraudulent electronics purchases at Wal-Mart on August 12, 2007; (2) he was present at Wal-Mart on August 13, 2007 when Singh made fraudulent electronics purchases, including lap top computers and that Singh passed one of them to him as Singh left the store; and (3) he had four credit cards encoded with stolen account information in his possession when he was arrested.

In addition, by failing to object to them Young admitted to the accuracy of the PSI's summary of the post-arrest statements of his co-conspirators, including Singh's statement that he and Young participated in the credit card fraud scheme for two months victimizing Wal-Mart by obtaining merchandise to which they were not entitled.

As we have already noted, Young admitted that Wal-Mart's total loss because of the conspiracy was $73,015. Young clearly played a key role in the conspiracy by purchasing merchandise using the fraudulent cards, assisting Singh while he did so, and delivering the merchandise to Rickards to be resold. We readily conclude that the district court did not clearly err in determining that Singh's purchases were acts committed in furtherance of the jointly undertaken criminal activity that were reasonably foreseeable to Young, and attributing the entire loss amount to Young, which justified application of the eight-level enhancement under U.S.S.G. § 2B1.1(b)(1)(E).

**B.**

In order to enhance a defendant's sentence based on the acts of any others, a district court "must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." Hunter, 323 F.3d at 1319; see also Gupta, 463 F.3d at 1200 ("[A] district court must make factual findings

8

sufficient to support the government's claim of the amount of fraud loss attributed to a defendant in a PSI."). After making these findings, the district court can then determine whether the conduct was reasonably foreseeable. Hunter, 323 F.3d at 1319.

Young did not object in the district court that there were insufficient fact findings to support the loss calculation, even though the district court solicited objections from the parties after sentencing. As a result, we review this issue solely for plain error, which means that we will reverse only where: (1) an error occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Duncan, 400 F.3d 1297, 1301 (11th Cir. 2005).

Although the district court did not make detailed factual findings as to the scope of criminal activity undertaken by Young, the court did state that it had found "particularly probative" the commentary to U.S.S.G. § 1B1.3 on relevant conduct for jointly undertaken activity. And Young did admit to the facts that established his role in the conspiracy, that he was a key player. Young admitted he was one of two individuals who received credit cards and gift cards encoded with stolen credit card information, used the cards to make fraudulent purchases of merchandise from Wal-Mart, and delivered the merchandise and credit cards to

9

Rickards, the individual who sold the merchandise. Thus, we cannot say that the district court committed plain error in this respect. Moreover, even if the district court's failure to spell out its findings more explicitly was error and it was plain, Young has not established that the error affected his substantial rights, which requires a showing of a reasonable probability of a different sentence if the error had not been made. See United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777–78 (1993); United States v. Rodriguez, 398 F.3d 1291, 1299–1306 (11th Cir. 2005). There is no reasonable probability that if the district court had been more explicit in its findings about the attribution of loss, Young would have received a lesser sentence.

**AFFIRMED.**