[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10026
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00006-WLS-TQL-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

J. HARRIS MORGAN, JR.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 30, 2011)

Before MARCUS, MARTIN and FAY, Circuit Judges.

PER CURIAM:

J. Harris Morgan, Jr. appeals his convictions for 69 counts of health care

fraud, in violation of 18 U.S.C. § 1347. On appeal, he argues that: (1) there is insufficient evidence to uphold his convictions; (2) the district court abused its discretion by admitting evidence of uncharged false healthcare claims, in violation of Federal Rule of Evidence 404(b); and (3) the court abused its discretion by refusing to give the good faith jury instruction that Morgan requested. For the reasons set forth below, we affirm Morgan's convictions.

## I.

Morgan, a pharmacist, owned Thrift Center Pharmacy ("Thrift") and Option Care. Thrift was a pharmacy provider with Georgia Medicaid. Morgan was charged with 69 counts of health care fraud, in violation of § 1347. Specifically, 58 of those counts alleged that he had submitted, and instructed others to submit, false claims regarding Synagis to Georgia Medicaid. The indictment alleged that Morgan submitted claims for larger doses of Synagis than were actually dispensed, false diagnoses to obtain approval to administer Synagis, and claims for Synagis more often than it was actually being administered to the patients. The final 11 counts alleged that Morgan submitted false claims for Hepatitis C drugs, Nutropin AQ, and "other drugs." These counts alleged that Morgan submitted to Georgia Medicaid: (1) false claims stating that larger doses of the drugs were administered than had actually been dispensed to the patients; (2) claims stating that the drugs

2

were administered at an earlier date than they actually were; and (3) claims for the drugs more often than they were ordered by the patients' physicians.

Morgan filed a pretrial motion for disclosure of evidence to be offered under Rule 404(b). The court set a deadline by which the government was to disclose any such evidence.

According to the trial testimony, Synagis was a medication given to premature infants and young children to prevent them from contracting respiratory syncytial virus ("RSV"). It was sold in 50 and 100 milligram vials. It was administered monthly during the RSV season, which ran from September until April during the time period at issue in this case. Pharmacists or physicians were required to obtain prior approval from Medicaid before administering Synagis to a Medicaid patient. When deciding whether to approve the use of Synagis, Medicaid considered the patient's age, diagnosis, risk factors for RSV, and other diseases the patient had. If Medicaid denied approval to administer Synagis, the pharmacist or physician had 72 hours to update the information and seek approval.

Joyce Sheppard testified that she was the billing clerk at Thrift. She did most of the Medicaid Synagis billing. Morgan had not given her instructions on how to submit Synagis claims, but he did tell her to bill it every 23 days. Billing that frequently allowed Thrift to pay its bills and ensure that the patients'

insurance would cover the medication. Sheppard was concerned that she would submit too many Synagis bills, but she did not remember if she had ever told Morgan that it was hard to keep up with the 23-day billing cycle.

Nancy Palmer, a registered nurse, testified that she had previously worked as the nursing director at Option Care. Morgan was actively involved in managing his businesses, and he did whatever work was needed, including working in the pharmacy, taking doctor's orders, and keeping up with administrative and billing issues. He and Sheppard handled the Synagis billing. Morgan told Sheppard to submit the Synagis claims every 23 days, to bill as early in the month as possible, and to submit the claims even if she did not know how much Synagis the nurses had actually administered. This system was "very chaotic," but Morgan maintained that it was necessary to ensure that he was able to pay the supplier for the Synagis. Palmer also testified that she and her coworkers determined that patients diagnosed with bronchopulmonary dysplasia ("BPD") were automatically approved to receive Synagis. Palmer learned that two employees were using a diagnosis of BPD to obtain prior approval for Synagis even if the patient's physician had not indicated that the patient had BPD. Morgan told Palmer that all of the patients had BPD and that they would continue to use that diagnosis.

Rhianna Williams, a licensed practical nurse, testified that she was the

Synagis coordinator at Option Care. Morgan was at Thrift on a daily basis, he ran the staff meetings where patients were discussed, and Williams had observed him billing Synagis. Williams and Paige Shiver generally obtained prior approval for Synagis. A few times when a patient was denied approval for Synagis, Morgan told Williams and Shiver to say that the patient was diagnosed with BPD even though the patient's doctor had not made that diagnosis. After doing so, the patients were approved to receive Synagis. When Williams and Shiver decided that they would no longer provide false diagnoses, Morgan, on a few occasions, obtained approval for patients. Both the government and Morgan's attorney reviewed patient files with Williams, and she testified that those files showed claims submitted as soon as 4 days after the prior claim was submitted and as late as 29 days after the prior claim was submitted. Additionally, Williams reviewed four patients' charts. Those patients had each received 8 doses of Synagis, but 9, 10, 11, and 12 claims were submitted to Medicaid for the patients respectively.

Shiver testified that she had previously worked as a pharmacy technician at Thrift and Option Care. When she told Morgan that she would not provide false diagnoses to Medicaid, he told her to leave the files with him because he would take care of them. She testified that Total Parenteral Nutrition ("TPN") was a nutritional supplement administered to patients at their homes. Morgan objected

5

that the government had not notified him of its intent to introduce evidence regarding TPN as required by Rule 404(b). The government argued that TPN was an "other drug" and that TPN claims were part of Morgan's scheme to defraud Medicaid as alleged in the final 11 counts in the indictment. The court overruled the objection, finding that Rule 404(b) did not apply because the evidence fell within the indictment's general allegations. Shiver then testified that it was inappropriate to submit a claim for TPN for a hospitalized patient, but she nonetheless saw such claims submitted by Morgan. Morgan conducted clinical staff meetings, at which the staff discussed which patients were hospitalized and thus did not need medicine prepared. Shiver saw TPN over-billings submitted by Morgan about twice a month.

Denise Colson, a state healthcare auditor, testified that Thrift had billed Medicaid for 7,524 100-milligram vials of Synagis, but it had only purchased 5,256 100-milligram vials of the drug.

Cynthia Vassell, a registered nurse and a state healthcare auditor, testified that she had reviewed Morgan's patient files for patients receiving Hepatitis C drugs. She identified instances where more Hepatitis C drugs were billed than the patient would have needed based on the patient's weight and other instances where Medicaid was billed for more refills than would have been administered.

6

For example, one patient would have received only 30 weeks worth of a drug during a time period when Medicaid was billed for 80 weeks worth of the drug. In another instance, the patient refused treatment, but Medicaid was billed for medications that would not have been prepared for or administered to that patient when he refused treatment.

Joe McGalliard, a pharmacist at Thrift and Option Care, identified two labels for Hepatitis C drugs that bore his initials. He acknowledged that the labels did not accurately reflect the doctors' prescriptions, and the labels pertained to two counts in the indictment.

Beth Anne Teague, a nurse and a state healthcare auditor, testified that she had reviewed 227 of Thrift's charts for patients receiving Synagis and other drugs. The charts contained over 2,000 claims. More than half of those claims were over-billed and less than 1% were under-billed. As to Count 70 specifically, the patient's prescription was for six vials of Nutropin AQ, with three refills. Thrift had billed Medicaid first for 14 vials, then for 12 vials, then for 14 vials, and finally for 7 vials of Nutropin AQ for this patient.

Following the close of the government's case and again after he rested without presenting evidence, Morgan moved for a judgment of acquittal. The court reserved its decision until the jury had reached a verdict.

At the charge conference, Morgan requested that the court instruct the jury on his good faith theory of defense. The court denied the request, finding that there was insufficient evidence in the record to warrant the instruction. The court's jury charge specified that, for Morgan to be found guilty, the jury had to find that he had acted willfully and with an intent to defraud. An intent to defraud meant acting "knowingly and with the specific intent to deceive someone." An action was taken knowingly if it "was done voluntarily and intentionally and not because of mistake or accident." An action was taken willfully if it was done voluntarily and with the specific intent to disobey the law. The court further charged that if Morgan "willfully directed or authorized" an employee or other associate or willfully joined with an employee or associate to commit a crime, then he was responsible for that individual's conduct as though he had engaged in the conduct himself. The jury found Morgan guilty of all 69 counts of healthcare fraud. Morgan moved for a judgment of acquittal, or in the alternative, a new trial. The court denied this motion.

## II.

We review challenges to the sufficiency of the evidence *de novo*. *United States v. Williams*, 527 F.3d 1235, 1244 (11th Cir. 2008). In reviewing the sufficiency of the evidence, we view "the evidence in the light most favorable to

8

the government," resolving "any conflicts in favor of the government and accept[ing] all reasonable inferences that tend to support the government's case." *Id.* "[W]e will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable doubt." *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005) (quotation omitted). "A jury is free to choose among the constructions of the evidence," and the evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001) (quotation omitted).

To support a conviction for health care fraud under 18 U.S.C. § 1347, the government must prove that the defendant: (1) knowingly and willfully executed, or attempted to execute, a scheme to (2) defraud a health care program or to obtain by false or fraudulent pretenses money or property under the custody or control of a health care program, (3) "in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347. The government must show that the defendant knew that the submitted claims were false. *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007). The government may rely on circumstantial evidence to establish the defendant's intent. *United States v. Suba*, 132 F.3d 662, 675 (11th Cir. 1998).

9

A defendant may be convicted as a principal if he: (1) commits the offense himself; (2) "aids, abets, counsels, commands, induces or procures" the commission of an offense; or (3) "willfully causes" an offense to be committed. 18 U.S.C. § 2. To succeed using an aiding and abetting theory, the government must prove that the defendant: (1) "associated himself with the criminal venture"; (2) wished to bring about the criminal offense; and (3) "sought by his actions to make it succeed." *United States v. Broadwell*, 870 F.2d 594, 608 (11th Cir. 1989). The defendant does not need to have committed "the overt act that served to accomplish the offense" to be convicted under an aiding and abetting theory. *Id.*

Here, there was sufficient evidence for the jury to find Morgan guilty of health care fraud. *See Williams*, 527 F.3d at 1244. On appeal, Morgan only argues that there was insufficient evidence that he knowingly and willfully executed a scheme to defraud Medicaid.

The testimony at trial showed that Morgan actively managed Thrift and Option Care, that he was involved in the billing process, and that he submitted at least some Synagis claims. The evidence further showed that he directed Williams and Shiver to submit false diagnoses to Medicaid to obtain approval to administer Synagis. When they would no longer provide false diagnoses, Morgan told them that he would handle the Synagis prior approvals himself. The evidence also

10

showed that Morgan told Sheppard to bill Synagis every 23 days even if she did not know how much Synagis the nurse had actually administered and that the claims were sometimes submitted even more frequently than that. Because Synagis was only administered every 30 days, under Morgan's system, Sheppard would submit claims more often than the drug was actually administered. The jury was free to disbelieve Morgan's asserted reason for this system and instead conclude that he told Sheppard to submit claims every 23 days knowing and intending that it would lead to over-billing Medicaid. *See id.* Moreover, Colson testified that Thrift billed Medicaid for more than 2,000 more 100-milligram vials of Synagis than it had actually purchased.

As to the Hepatitis C counts, the evidence showed a pattern of over-billing Medicaid, including one instance where Medicaid was billed for 80 weeks worth of the drug when only 30 weeks worth of the drug would have been administered to the patient—nearly a year's worth of over-billing. Another patient had refused treatment, but Medicaid was nonetheless billed for medications that would not have been prepared for or administered to that patient. As to the Nutropin AQ count, Teague testified that Thrift had billed Medicaid for 23 more vials of Nutropin AQ than the patient's prescription authorized. Finally, there was evidence of the extensive scope of Thrift's and Option Care's over-billing: Teague

11

testified that more than half of the 2,000 claims she reviewed were over-billed, but less than 1% were under-billed.

Thus, the jury had before it evidence of Morgan's instructions and actions regarding submitting false diagnoses to Medicaid to obtain Synagis approval, the reasonable inference that he intentionally set up the Synagis billing system to result in over-billing, and evidence of the extensive scope of Thrift's and Option Care's over-billing of Medicaid as to Synagis, Hepatitis C drugs, and Nutropin AQ. Based on this evidence, the jury could reasonably infer that Morgan willfully caused his employees to execute his scheme to defraud Medicaid through the submission of false diagnoses, claims for more drugs than were actually administered to patients, and claims for drugs when no drugs were administered at all. *See* 18 U.S.C. §§ 2, 1347.

## III.

We review evidentiary rulings for a clear abuse of discretion. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). Federal Rule of Evidence 404(b) prohibits the admission of evidence of other crimes or acts "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). Evidence of other crimes or acts may be admitted for other reasons, however, such as to show the defendant's intent, plan, knowledge, or

absence of mistake.  *Id.*  Before introducing such evidence for one of these other purposes, the government must notify the defendant, upon the defendant's request, "of the general nature of any such evidence it intends to introduce at trial."  *Id.*  Evidence does not fall within Rule 404(b)'s confines "if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."  *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993).  If a court commits error under Rule 404(b), we "determine whether the error was harmless."  *United States v. Bradley*, 644 F.3d 1213, 1273 (11th Cir. 2011).  "Admission of unnoticed Rule 404(b) evidence prejudices a defendant where the evidence had a substantial influence on the outcome of the trial."  *Id.* at 1273-74.

In this case, the court erred in admitting the TPN evidence, but the error was harmless.  The government argued that the TPN evidence constituted uncharged offenses because TPN was an "other drug" within the scope of the final 11 counts of the indictment.  However, those counts alleged that Morgan submitted claims for a larger quantity of the drugs than prescribed and administered, submitted claims before the drugs were administered, and submitted claims more frequently than the drugs were prescribed.  According to Shiver's testimony, the TPN claims

13

were improper because they were submitted while patients were hospitalized, not because the claims themselves were inaccurate, submitted too early, or submitted too often. This evidence thus did not constitute an uncharged offense within this scheme, it was not necessary to explain the crime, and it was not "inextricably intertwined" with the scheme to submit inaccurate claims to defraud Medicaid. *Veltmann*, 6 F.3d at 1498. Therefore, the TPN evidence did not fall under Rule 404(b), and the court erred in admitting it due to the government's lack of notice. *See* Fed.R.Evid. 404(b).

However, any error was harmless because the TPN evidence did not prejudice Morgan or substantially influence the verdicts. *See Bradley*, 644 F.3d at 1273-74. There was sufficient evidence of Morgan's guilt even without the TPN evidence, as discussed above. Only one witness briefly testified about the TPN claims, while numerous witnesses gave extensive testimony about the over-billing of Synagis, Hepatitis C drugs, and Nutropin AQ. Finally, because the TPN evidence was presented in the government's case in chief, Morgan could have presented a defense case to attempt to rebut the evidence.

IV.

"We review a district court's refusal to give a requested jury instruction for abuse of discretion." *United States v. Martinelli*, 454 F.3d 1300, 1309 (11th Cir.

14

2006) (quotation omitted). The defendant bears a low burden to obtain an instruction on his theory of defense: he is entitled to such an instruction if "there is *any foundation* [for the instruction] in the evidence." *Id.* at 1315 (quotation omitted). A court abuses its discretion in refusing to give a requested instruction where: (1) the instruction correctly stated the law, (2) the instruction's "subject matter was not substantially covered by other instructions," and (3) the refusal "seriously impaired the defendant's ability to defend himself." *Id.* at 1309 (quotation omitted). In *Martinelli*, the court did not abuse its discretion when it refused to give a good faith instruction because it emphasized in its jury charge that the defendant had to act knowingly to be found guilty. *Id.* at 1315. Moreover, the court had explained that to act knowingly meant to act "voluntarily and intentionally and not because of accident or mistake." *Id.* at 1316 (quotation omitted). Based on the court's jury charge, "the jury plainly had to rule out the possibility that" the defendant acted in good faith to find him guilty. *Id.*

The district court did not abuse its discretion in refusing to instruct the jury on good faith. *See id.* at 1309. First, there was insufficient evidence of good faith to warrant the instruction. *See id.* at 1315. The evidence showed that Morgan instructed Williams and Shiver to submit false diagnoses to Medicaid and that he implemented a billing system for Synagis that would naturally result in

15

over-billing.  However, even if Morgan had met this burden, the court did not abuse its discretion because its jury instructions adequately covered the subject matter of good faith.  *See id.* at 1309.  Like the court in *Martinelli*, the court in this case instructed the jury that Morgan had to act knowingly, willfully, and with the specific intent to defraud to be found guilty.  *See id.* at 1315.  Also like the court in *Martinelli*, this court emphasized that Morgan had to act "voluntarily and intentionally and not because of mistake or accident."  Under these instructions, the jury had to find that Morgan did not act in good faith and that he instead intended to disobey the law.

For the foregoing reasons, we affirm Morgan's convictions.

**AFFIRMED.**