[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-10283

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TRAVIS C. CROSBY,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cr-00011-LMM-CCB-3

————————————————

Before JILL PRYOR, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Travis Crosby appeals his convictions and sentences for conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, bank fraud, in violation of 18 U.S.C. § 1344, making a false statement to a federally insured bank, in violation of 18 U.S.C. § 1014, and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), after obtaining a fraudulent $300,000 loan in 2020 under the federal Paycheck Protection Program ("PPP").  On appeal, he argues that: (1) at trial, the district court erred by admitting testimonial evidence concerning fraudulent PPP loan activity of other conspirators, since this evidence was unrelated to the conspiracy he was charged with and highly prejudicial; and (2) at sentencing, the court erred when it held him accountable for the $600,000 loss associated with the PPP loans that were not his, because there was insufficient evidence that he was in a jointly-undertaken activity with them and the court failed to make individualized findings when it held him accountable for their loss.  After careful review, we affirm.

I.

We review a district court's decision as to the admissibility of evidence under a deferential abuse-of-discretion standard and "will affirm even if we would have decided the other way." *United States v. Burnette*, 65 F.4th 591, 605–06 (11th Cir. 2023) (quotations omitted).  Accordingly, even erroneous evidentiary rulings are only reversed if the resulting error was not harmless. *United States*

*v. Dickerson*, 248 F.3d 1036, 1048 (11th Cir. 2001). An error is harmless where it has "no substantial influence on the outcome and sufficient evidence uninfected by the error supports the verdict." *Id.* (quotations omitted).

We review a district court's interpretation of the Sentencing Guidelines *de novo* and its loss determination for clear error. *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007). For a finding to be clearly erroneous, the appellate court, based on the record as a whole, must be "left with a definite and firm conviction that a mistake has been committed." *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011) (quotations omitted). However, we need not reverse an error that was harmless, and an error is harmless if the defendant's guideline range is unaffected by it. *United States v. Bradley*, 644 F.3d 1213, 1292 (11th Cir. 2011).

## II.

First, we are unpersuaded by Crosby's argument that the district court erred in admitting certain testimony at trial. The Federal Rules of Evidence define "relevant evidence" as evidence that "has any tendency to make a fact more or less probable," provided that "the fact is of consequence in determining the action." Fed. R. Evid. 401. Generally, relevant evidence is admissible unless otherwise specified. Fed. R. Evid. 402. Federal Rule of Evidence 404(b) prohibits the introduction of evidence of a crime, wrong, or other act to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). It does, however, allow this kind of

evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

When reviewing a cold record, we give substantial deference to the fact-finder's credibility determinations, resolving all credibility choices in support of the verdict. *United States v. Lebowitz*, 676 F.3d 1000, 1009, 1013–14 (11th Cir. 2012). Further, "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *United States v. Turner*, 474 F.3d 1265, 1279–80 (11th Cir. 2007) (quotations and alterations omitted).

A party abandons a claim when he does not plainly and prominently raise it in his brief, by, for example, devoting a section of his argument to that claim. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *see also United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (*en banc*). In other words, "an appellant abandons a claim when he either makes only passing reference to it or raises it in a perfunctory manner without supporting arguments and authority." *United States v. Esformes*, 60 F.4th 621, 635 (11th Cir. 2023) (quotations omitted).

Here, Crosby challenges the district court's admission of testimonial evidence of fraudulent PPP loan activity from Rodericque Thompson and Antonio Hosey -- individuals with whom Crosby conspired to obtain a fraudulent PPP loan and conceal the fraud through a check-cashing scheme -- because Crosby claims their testimony covered conspiracies unrelated to his. At the outset, we

note that although Crosby does not cite Rule 401 in his initial brief, he says that Hosey's and Thompson's evidence "is purely extrinsic, since it had nothing to do with the conspiracy in which [he] was found guilty of having participated." So, as we see it, he does challenge the relevancy and intrinsic nature of the evidence under Rule 401, and has not abandoned this issue on appeal.

Nevertheless, we need not reach whether the district court abused its discretion in admitting Hosey's and Thompson's testimony about the fraudulent loan activity of other conspirators, because the error was harmless in light of the substantial independent evidence of Crosby's guilt.[1] As the record reflects, independent of the challenged testimony, which was just over two pages of a three-day trial transcript, the government presented sufficient evidence uninfected by the alleged error that supports the verdict.

For starters, the unchallenged evidence -- which includes Crosby's own testimony -- established that coconspirator Thompson helped Crosby obtain a PPP loan. Crosby conceded that Thompson had completed a PPP loan application for him that fraudulently claimed, on behalf of Crosby's business, $120,000 in monthly payroll and 16 employees, and contained a fraudulent Form 941 substantiating the information. Crosby admitted to receiving a $300,000 PPP loan as a result of the fraudulent

---

[1] To the extent Crosby also is seeking to challenge whether Hosey's and Thompson's testimony was inadmissible under Rule 404(b), we do not reach that issue either, because, again, even assuming the testimony was inadmissible under Rule 404(b), the error was harmless, as we'll explain.

application.  In addition, the evidence revealed that Crosby had written 24 purported payroll checks to individuals who did not work for his company, including those he testified to not knowing at the time, and he falsely confirmed that the checks were legitimate payroll checks when bank representatives called him to verify the checks.  Importantly, the jury also heard Crosby testify that he believed that everything Thompson was instructing him to do was "legit," and that he did not know that what they were doing was a "scam."  As we've long recognized, the jury, hearing Crosby's words and seeing his demeanor, was entitled to disbelieve his testimony and, in fact, believe the opposite of what he said -- that he knew what he was doing was not legit, and that it was a scam. *Turner*, 474 F.3d at 1279–80.

Further, Thompson gave other compelling testimony -- aside from his testimony concerning other fraudulent schemes -- of Crosby's guilt.  This includes evidence that Thompson had told Crosby that a certain number of employees and a certain amount of payroll needed to be included on the application for the PPP loan, that Crosby was on the phone as Thompson completed the application and was aware that Thompson was entering that false information, that Thompson charged Crosby a 50 percent fee to provide 8 fictious employees to cash employee checks, and that Crosby had to come up with 8 fictitious employees to help cash the checks.  There was also testimony from Thompson that Crosby had referred other people, Keith Maloney and Market Stewart, to Thompson to file other fraudulent PPP loans.  On appeal, Crosby claims that this testimony was inconsistent, but we defer to the

fact-finder's credibility determinations, resolving all credibility choices in support of the verdict. *Lebowitz*, 676 F.3d at 1009, 1013. Moreover, even without considering Thompson's testimony (which the jury was entitled to consider), there was more than enough independent evidence to establish Crosby's guilt.

All told, on this ample record, we are compelled to conclude that the challenged testimony had no substantial influence on the outcome on the verdict, and we affirm Crosby's convictions. *See Dickerson*, 248 F.3d at 1048.

## III.

We also are unconvinced by Crosby's argument that the district court erred at sentencing when it held him accountable for a $600,000 loss, part of which was associated with the PPP loans of other people. Under the sentencing guidelines, a defendant is accountable for all acts that he "committed, aided, abetted . . . or willfully caused." U.S.S.G. § 1B1.3(a)(1). In cases involving joint criminal activity, a defendant is also accountable for the conduct of others if that conduct was (1) "within the scope of the joint undertaken criminal activity," (2) "in furtherance of that criminal activity, and" (3) "reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(B)(i)-(iii).

"When determining the loss amount attributable to a particular defendant convicted of a conspiracy offense, the district court must first determine the scope of criminal activity the defendant agreed to jointly undertake, and then consider all reasonably foreseeable acts and omissions of others in the jointly undertaken

criminal activity." *United States v. McCrimmon*, 362 F.3d 725, 731 (11th Cir. 2004) (quotations omitted). We've held that the district court erred when it did not make specific factual findings upon which to base the loss amounts. *Medina*, 485 F.3d at 1304–05. However, we've also recognized that "a sentencing court's failure to make individualized findings regarding the scope of the defendant's activity is not grounds for vacating a sentence if the record supports the court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant." *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002).

Because loss amount is a factual finding, in calculating the amount of loss attributable to a defendant, a district court may rely on "trial evidence, undisputed statements in the presentence report, or evidence presented at the sentencing hearing." *United States v. Pierre*, 825 F.3d 1183, 1197 (11th Cir. 2016). "The amount of loss must be proven by a preponderance of the evidence, and the burden must be satisfied with reliable and specific evidence." *Medina*, 485 F.3d at 1304 (quotations omitted).

For offenses involving fraud, under U.S.S.G. § 2B1.1, the Guidelines provide an increase to a defendant's offense level depending on the amount of loss that resulted from the fraud, starting with a base level of 7 where "the defendant was convicted of an offense referenced to this guideline," and where the "offense of conviction has a statutory maximum term of imprisonment of 20 years or more." U.S.S.G. § 2B1.1(a)(1). Section 2B1.1 of the 2021 Guidelines provides for a 14-level increase for a fraud offense

involving a loss amount that is more than $550,000, but less than $1,500,000. *Id.* § 2B1.1(b)(1)(H).

Here, the district court did not clearly err in holding Crosby accountable for a $600,000 loss. Although the court did not make individualized findings at sentencing, as it should have, the record supports holding Crosby responsible for this loss amount. *Petrie*, 302 F.3d at 1290. As we've already discussed, the record established that Crosby received a $300,000 PPP loan as a result of his fraudulent application. In addition, the record included testimony from Thompson -- testimony that, as we've explained, we defer to and deem credible in support of the verdict, *see Lebowitz*, 676 F.3d at 1009, 1013 -- that Crosby had referred another person, Keith Maloney, to Thompson for help in filing a fraudulent PPP loan on Maloney's behalf. The government also produced text messages between Crosby and Thompson in which Thompson sent Crosby a picture of Maloney's loan approval showing that Maloney had received $300,000. Thompson texted that "Keith [Maloney] was approved," and Crosby responded saying, "that's was [sic] up." Plus, the government introduced text messages between Thompson and Crosby in which Crosby was providing Thompson with Maloney's contact information. On this record, the loss of the $300,000 PPP loan made to Maloney was reasonably foreseeable to Crosby, and we cannot say that we are left "with a definite and firm conviction" that the district court's decision to hold Crosby responsible for Maloney's loss was a mistake. *Barrington*, 648 F.3d at 1195.

In short, the evidence reveals that Crosby was aware of Thompson's fraudulent PPP loan scheme, that Crosby applied for his own $300,000 fraudulent loan, that he referred Maloney to Thompson for a fraudulent PPP loan, and that Maloney was approved for a $300,000 PPP loan -- which altogether results in a loss amount of $600,000. We need not address whether the district court erred in attributing to Crosby the loss from another $300,000 PPP loan -- one for coconspirator Market Stewart -- because any error in the inclusion of Stewart's loan in Crosby's loss amount was harmless. Indeed, even excluding Stewart's $300,000 PPP loan, the loss amount still would be $600,000, which, under the Guidelines, still results in a 14-level increase. *See* U.S.S.G. § 2B1.1(b)(1)(H). Accordingly, we affirm.

**AFFIRMED.**