[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13076
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cr-00002-MCR-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER JESSE LEE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 29, 2014)

Before TJOFLAT, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Christopher Jesse Lee appeals his sentence of 120 months of imprisonment

after pleading guilty to one count of conspiracy to file fraudulent tax returns, in

violation of 18 U.S.C. § 286, and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341, 1349.  Lee raises two arguments on appeal.  First, Lee argues that the district court erred by imposing a four-level enhancement for his leadership role in the conspiracy.  Second, he argues that the district court erred by holding him responsible for over $1,000,000 in losses.

I.

We first consider Lee's argument that the district court improperly assessed a four-level enhancement for Lee's role as an organizer or leader of the conspiracy. Lee argues that his conduct was completely independent of the actions of his codefendants, and he claims that Cora Beard was the true organizer of the conspiracy.  Because Lee was incarcerated during the course of the entire conspiracy (unlike Beard), he argues that it was impossible for him to exercise any control over anyone else.  He also contends that there was no proof of his leadership role relative to other members of the conspiracy.

We review a district court's factual determination that a defendant is subject to a United States Sentencing Guidelines (USSG) § 3B1.1 role enhancement for clear error.  United States v. Martinez, 584 F.3d 1022, 1025 (11th Cir. 2009). "Where a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous."  United States v. Almedina, 686 F.3d 1312, 1315 (11th Cir. 2012) (quotation marks omitted).

2

USSG § 3B1.1(a) states that a four-level enhancement will apply if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." In assessing a defendant's role in the offense, district courts should consider the following factors: (1) "the exercise of decision making authority," (2) "the nature of participation in the commission of the offense," (3) "the recruitment of accomplices," (4) "the claimed right to a larger share of the fruits of the crime," (5) "the degree of participation in planning or organizing the offense," (6) "the nature and scope of the illegal activity," and (7) "the degree of control and authority exercised over others." USSG § 3B1.1, comment. (n.4); see also United States v. Gupta, 463 F.3d 1182, 1198 (11th Cir. 2006). There can be "more than one person who qualifies as a leader or organizer." USSG. § 3B1.1, comment. (n.4); see also United States v. Ndiaye, 434 F.3d 1270, 1304 (11th Cir. 2006) ("Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." (quotation marks omitted)). Although the district court's factual determination regarding a defendant's role in the offense is entitled to deference, it "should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." United States v. De Varon, 175 F.3d 930, 940 (11th Cir.

3

1999) (en banc).

With these principles in mind, we cannot say that the district court clearly erred by applying the leadership enhancement to Lee. According to the factual basis for his guilty plea, Lee and his codefendants devised and executed a scheme to file fraudulent tax returns in order to obtain refunds from the Internal Revenue Service (IRS). As a part of this scheme, Lee collected names and Social Security numbers in order to file false tax returns on their behalf. These tax returns would list the addresses of Cora Beard and other coconspirators who were able to receive refunds because they were not incarcerated. Once the refund checks arrived, the proceeds were divided among the coconspirators both in and out of prison.

Lee was instrumental in the scheme because he prepared false returns and directed Beard and others in preparing and mailing the returns. For example, the government presented recorded phone calls in which Lee directed Beard to mail letters, manage money orders, and arrange for certain individuals to cash the refund checks. Lee also disseminated mailing addresses and collaborated with Beard about controlling how frequently certain addresses were to be used. Once tax season opened, Lee also directed Beard to secure addresses for him and discussed with her how to divide up the proceeds from the refunds. In the same way, while Lee was in lockdown, he instructed another inmate to call Beard regarding a check that he wanted cashed. Finally, Lee recruited other inmates into

4

the conspiracy and used their contacts outside of prison to serve as additional recipients where refund checks could be mailed.

Based on this record and our standard of review, we cannot say that the district court clearly erred by applying the four-level enhancement to Lee. Although Lee was incarcerated during the course of the conspiracy, he nevertheless exerted control and influence by directing Beard to act on his behalf, recruiting other inmates into the conspiracy, and deciding how the refunds should be divided. Also, while Lee may be correct that Beard served in a leadership role, we know that there can be more than one leader or organizer. See USSG § 3B1.1, comment. (n.4). On this record, we conclude that the district court did not clearly err by finding that Lee exercised "some degree of control, influence, or leadership" over the scheme as a whole. Gupta, 463 F.3d at 1198 (quotation marks omitted).

## II.

We next consider Lee's argument that the government did not establish a factual basis for the $1,398,748 loss amount. Lee argues that the district court failed to make individualized findings regarding the scope of his criminal activity. He also notes that the government prepared a spreadsheet with 18 addresses where refunds were sent, but contends that the government did not provide sufficient evidence that refunds mailed to these addresses were in furtherance of the conspiracy and reasonably foreseeable to him.

5

We review the district court's determination of amount of loss for clear error. United States v. Medina, 485 F.3d 1291, 1303 (11th Cir. 2007). For a finding to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed." United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted). Because the amount of loss caused by fraud is often difficult to accurately calculate, district courts need only make "a reasonable estimate of the loss amount." Medina, 485 F.3d at 1304; USSG § 2B1.1, comment. (n.3(C)). The loss amount must be proven by a preponderance of the evidence through reliable and specific evidence. Medina, 485 F.3d at 1304.

The Sentencing Guidelines provide for a 16-level increase to the base offense level if a defendant is responsible for loss between $1 million and $2.5 million. USSG § 2B1.1(b)(1)(I)–(J). According to USSG § 1B1.3, when defendants participate in jointly undertaken criminal activity, they are accountable for the conduct of others that was both: (1) in furtherance of the jointly undertaken criminal activity; and (2) reasonably foreseeable in connection with that criminal activity. USSG § 1B1.3(a)(1)(B) & comment. (n.2). Before holding a defendant responsible for the acts of others, "the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." See United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003)

(quotation marks omitted).  But failure to make such findings "is not grounds for vacating a sentence if the record supports the court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant."  United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002).

The district court's conclusion regarding the loss amount attributable to Lee was not clearly erroneous.  Even though the district court did not explicitly make individualized findings regarding Lee's involvement in the conspiracy, the undisputed facts indicate that Lee agreed to be a part of an overall scheme to file fraudulent tax returns to obtain refunds.  Multiple phone calls show that Beard and Lee discussed other participants in the conspiracy.  In this sense, Beard served as a hub so that the various members of the conspiracy could coordinate and exchange information about where to send refunds and how the proceeds should be distributed.

Beyond that, the record also supports the district court's finding that all 18 addresses listed in the government's spreadsheet were reasonably foreseeable to Lee.  As we have said, Lee was certainly aware that he was not the only one who was submitting false tax returns, and he was also aware that Beard was not the only one receiving refunds.  Lee and Beard also knew that the scheme could not function if too many refunds were sent to the same addresses, which is why they discussed finding new addresses where refunds could be sent.  Therefore, Lee

7

should have reasonably foreseen that some refunds would be sent to other addresses, even if Lee was not personally involved with those specific tax returns.

### III.

For the reasons stated above, we affirm.

**AFFIRMED.**